THE KELLOGG-MACKAY CO. *v.* O'NEAL ET AL.

374

(Decided March 31, 1931.)

*Messrs. Meyer & Crossan,* for plaintiff in error.
*Messrs. Schanfarber & Walsh, Mr. R. L. Mellman*
and *Mr. S. D. Luchs,* for defendants in error.

SHERICK, P. J.    The Kellogg-Mackay Company,
which was the plaintiff in the trial court, seeks a re-
versal of a judgment entered against it and in favor
of the defendant Hartford Accident & Indemnity
Company.

The action was originally begun against the de-
fendant Eugene F. O'Neal, seeking to replevin 600
shares of Federal Radiator & Boiler Company stock,
held by him for the benefit of others interested
therein.   Since the inception of this suit, which was
first filed January 2, 1929, O'Neal has died and the
stock is now held by agreement by the clerk of this

court pending the outcome of this suit. Prior to the death of O'Neal the issue was fully made up between him and the plaintiff company. On July 1, 1929, the indemnity company intervened in this suit by way of answer and cross-petition, and to this pleading the plaintiff has answered.

We deem it unnecessary to recite the averments of the pleadings at this point; however, they will hereinafter be commented upon. The following facts, taken from the agreed statement of facts, are pertinent to the issue, and lay the foundation for the respective claims of the two contending parties:

On February 17, 1927, one Schlade, for a valuable consideration, gave his note to plaintiff for the sum of $54,358.38, and at the same time pledged as collateral to secure the same 600 shares of the capital stock of the Federal Radiator & Boiler Company. This stock was delivered to the plaintiff unindorsed.

On February 11, 1927, the Indemnity Company agreed to and did contract with Lord & Burnham Company to indemnify it for any loss sustained through defalcation of Schlade, up to $10,000. The contract embraced Schlade as the vice president of the radiator company, which was a subsidiary of Lord & Burnham. And on July 23, 1927, a like policy was made with a limitation of $50,000.

At some time between June 15 and November 26, 1927, Schlade embezzled the sum of $13,804.74, which the indemnity company paid to the Lord & Burnham Company on July 20, 1928.

It appears that on July 9, 1927, the plaintiff reinvested the pledgor, Schlade, with possession of the pledged shares for the purpose of procuring their reissue from a new company, the Federal Ra-

diator Company, a Delaware corporation, which had acquired the assets of the Federal Radiator & Boiler Company. The stock was reissued on August 2, 1927, in the name of the pledgor, and on November 3, 1927, Schlade redelivered this stock unindorsed in pledge to the plaintiff company.

The note was a thirty-day note, and it appears that from the time of its due date plaintiff many times solicited payment, and a considerable file of correspondence between Schlade and the plaintiff, attached to the agreed statement of facts, discloses that plaintiff was insisting that Schlade either negotiate a loan elsewhere, with this stock as security therefor, or procure a purchaser of it, and thereby liquidate his indebtedness to the plaintiff.

It follows that on November 22, 1927, Schlade wired plaintiff that he had just received word from Burnham, of Lord & Burnham, that one Bowden, its president, as disclosed by the correspondence, was "ready to close for stock. Kindly mail certificates to me today so that I can mail entire amount to them so that we can get cleaned up." And, in response to this telegram, the plaintiff company on the same day reinvested its pledgor with possession of the certificates for that purpose.

It appears that this sale was not consummated, and that Schlade held the stock until December 22, 1927, at which time, upon the solicitation of one Weiss, an officer of the Lord & Burnham Company and the radiator company, he delivered the same to the defendant O'Neal, an attorney of Zanesville, who represented Lord & Burnham and the radiator company, in order that Weiss might purchase the stock. At this time the stock was indorsed by

Schlade in blank. No other indorsements appeared thereon. Weiss made no attempt to purchase the stock, and the agreed statement of facts discloses no reason therefor.

It is further stipulated that it was understood that the proceeds of sale were to pay Schlade's indebtedness to the radiator company, and that it would forbear resorting to legal action to satisfy its claim against Schlade's other property, and that at that time Schlade's defalcations were known to the indemnity company.

Immediately upon receipt of the stock, O'Neal notified the indemnity company of the situation, and an agreement was entered into between O'Neal on behalf of Radiator and the indemnity company to hold the certificates for the purposes previously noted.

It is agreed that at time of delivery to O'Neal, Schlade made no statement as to the plaintiff's right to the stock; and that O'Neal, Weiss or the radiator companies had no knowledge of the plaintiff's claim.

On January 5, 1928, the plaintiff notified O'Neal of its claim to the stock; and it is agreed that the plaintiff had no knowledge of the matters stated in the last four preceding paragraphs.

The exhibits attached to the agreed statement of facts contain certain matters not denied by the indemnity company, and hence admitted as true, which are of interest, and have a bearing on the rights of the parties to this suit. There appears therein a card, bearing date of December 15, 1927, of the radiator company, advising that effective this date Schlade is no longer a vice president of or connected with the radiator company.

There also appears of date of May 19, 1927, a letter of Schlade to the plaintiff company reciting facts that disclose that O'Neal had knowledge, of Schlade's indebtedness to the plaintiff, and that O'Neal, as president of a local bank, had indicated a possibility of furnishing Schlade with half of his indebtedness to the plaintiff. This letter is in direct conflict with that portion of the agreed facts as to O'Neal's knowledge.

There also appears a telegram from Schlade to plaintiff, dated Tuesday, December 13, 1927, reciting that Schlade had just received word to be in New York, Friday the 16th, and that he expected everything to be taken care of, and that he would wire plaintiff from New York.

Under date of Saturday, December 17, 1927, Schlade writes plaintiff that he is leaving for New York, Sunday the 18th, to settle with Burnham, and under date of Thursday, December 22, 1927, appears a telegram from Schlade at New York to plaintiff, that he will not get back to Zanesville until Sunday the 25th of December. And, under date of Tuesday, December 27th, it appears that Schlade wires plaintiff from Zanesville that he is mailing check to the plaintiff at Chicago for $14,000, balance to follow. The check was received by plaintiff and went to protest for lack of funds.

From this correspondence it is plain that the stock must have been delivered to O'Neal in New York, and at or about the same time as Schlade's meeting with Burnham or Weiss.

One further fact appears from the exhibits. It seems that Schlade was a vice president of the radi-

ator company practically to the date of his retirement, whether voluntary or involuntary.

Upon this state of facts the indemnity company claims a right of subrogation to the rights possessed by the radiator companies. And it is agreed that it has this right if the radiator companies possessed any rights to this stock. The prayer of its cross-petition is for priority over the plaintiff. And it is asserted in argument and brief that the plaintiff was negligent, and that it should be estopped thereby, and that both parties being innocent of wrongdoing, the plaintiff should bear the loss, as it had made it possible.

It is further claimed by the indemnity company that the pledge of the stock by Schlade to O'Neal is supported by a sufficient consideration, that being the radiator company's pre-existing debt and its agreement to forbear legal action.

The plaintiff claims in its petition that it has a special interest in and ownership thereof by reason of Schlade's pledge to it, and that, by reason of O'Neal's wrongful withholding of the certificates from it, it is entitled to replevin the stock from him; and the plaintiff now asserts in this court that the judgment of the trial court is *contra* to the law and the manifest weight of the evidence.

In view of the fact that the plaintiff claims that the radiator company, through its officers and agents, had resorted to trick and artifice, amounting to fraud, in order to procure delivery of the stock to its agent, O'Neal, it is necessary that the averments of the petition be considered, and especially so in that the defendant makes claim that fraud, not having been pleaded, cannot now be shown.

It will be remembered that this proceeding is a replevin action and not a proceeding grounded on the theory of a fraudulent taking of property of another, but is one brought under and by virtue of Section 12052 of the General Code, the gist of which is the unlawful and wrongful detention of the property. The general rules of pleading, that is that one who claims fraud must plead the facts showing the fraud complained of, do not apply in an action in replevin, for the same is a civil action, special in its nature, and it is held that the statute provides what the petition shall contain; all other matters would, therefore, be mere surplusage, subject to be stricken out upon motion.

We therefore conclude that in an action of this kind fraud may be proved under the general allegations of special ownership, right of possession and unlawful detention. Attention is directed to the case of *Wilmot* v. *John H. Lyon & Co.,* 11 C. C., 238, 244 and 245 (7 C. D., 394), wherein this question is considered and reviewed, and it is determined that such facts are evidential rather than such as are required to be pleaded.

The plaintiff, on the other hand, makes a like assertion in that the indemnity company has not alleged sufficient facts in its answer to permit it to prove or claim an estoppel on the part of the plaintiff by its negligent acts and conduct in the handling of this stock.

We do not deem it necessary to determine if it be necessary to plead an estoppel as a bar to a recovery in an action in replevin, for the very good reason, as stated in *Harris* v. *Wallace Manufacturing Co.,* 84 Ohio St., 104, 108, 95 N. E., 559, 560, wherein

the court said: "But since in this state of the pleadings the evidence to establish an estoppel was admitted without objection, is it not entitled to be considered, notwithstanding the absence of such allegations as would make it competent?" This question the court answered in the affirmative. And it seems to this court, considering that the facts herein are agreed facts, the reason for the rule is but made stronger. And, if the admitted facts before us are sufficient to work an estoppel, the equitable doctrine should be applied even if the facts are insufficiently pleaded.

There can be no question that the capital stock of a corporation can be pledged to secure the payment of an obligation. And it is provided in Section 8673-1, General Code, that title to corporate stock may be transferred in one of two ways. The first, that is by indorsement, is lacking in this instance, the second way provided is by a "separate document containing a written assignment of the certificate or a power of attorney to sell," etc.

The plaintiff's note has a notation thereon, "600 shares Federal Radiator & Boiler Co. as collateral." It further appears from the facts that under date of July 9, 1927, at the time of the redelivery of the stock by the pledgee to the pledgor, the pledgor executed a document denominated a receipt, which in substance provided that the pledgor received the stock, "which is held as collateral to my note" to be transferred for 600 shares in the new Delaware Company, and "when this stock is returned to you, kindly send same to us, endorsed."

From these two papers it seems certain to us that the parties intended to transfer title, or at least a

special ownership therein, to the pledgee, and which are sufficient in law to have required the pledgor to have indorsed this stock as provided in Section 8673-9 of the Code. It is therefore our view that Schlade did, in fact, properly and sufficiently pledge this stock to the plaintiff, so as to give it a special interest and title therein as pledgee.

Now, the next question to be considered is whether or not the surrender of the certificates by the pledgee to the pledgor worked an extinguishment of the plaintiff's lien. The general rule is stated in 21 Ruling Case Law, 655, as follows: ''In the absence of fraud or a special bailment, a pledge will be deemed to be waived or lost by the voluntary and unconditional surrender of the pledged property by the pledgee to the pledgor.'' The surrender of the certificates in question was no doubt voluntary, unless induced by fraud or undue influence amounting to fraud, but from the facts it is evident that the pledgee did not make an unconditional surrender thereof. The stock was first surrendered for certificate exchange, which was accomplished, and the stock as reissued redelivered to the pledgee. The second redelivering to the pledgor was for the purpose of sale and satisfaction of the pledgee's debt, and thereby the pledgor was constituted the plaintiff's agent for that purpose only.

It is said in 21 Ruling Case Law, 657, that: ''If the property pledged be delivered back to the owner in a new character, as, for example, as a special bailee or agent, it is usually held that the pledgee will still be entitled to the pledge, not only as against the owner, but also as against third persons.'' And, further on in the same authority and section, a fur-

ther exception to the general rule is noted in the following language: "Thus it has frequently been decided that the pledgee may, without losing his lien, deliver the property over to the pledgor for the express purpose of selling it for the benefit of the pledgee." And *Fairbanks, Jr.,* v. *Sargent, Exr.,* 117 N. Y., 320, 22 N. E., 1039, 6 L. R. A., 475, is cited as authority.

See, also, *Hollister* v. *Dinsmore,* 191 Ill. App., 377.

We consider now the question whether or not there was a consideration to support the pledge of the stock to O'Neal, and the resultant question whether Radiator was an innocent holder for value.

The defendant company admits that Schlade's debt to it was an antecedent debt. We are conversant with the majority rule that collateral security may be taken in pledge to secure a pre-existing debt, but Ohio is not found in that column.

In the early case of *Roxborough* v. *Messick,* 6 Ohio St., 448, 455, 67 Am. Dec., 346, our Supreme Court said: "When, then, a debt is created without any agreement for security, and the debtor afterward, without any obligation to do so, * * * voluntarily transfers a negotiable instrument to secure the same, and both parties are left in respect to the debt *in statu quo,* we are unable to see what value or consideration, recognizable by traders, was paid for the instrument, or how such gratuitous favor can be deemed a usual transaction in the course of trade, or indeed as any trade or reciprocity of values at all. To hold that the unchanged condition of the precedent debt formed a present consideration for doing what the obligations of that debt did not

require, is raising a consideration by assertion, when none in fact exists.'' This case is approved and followed in *City of Cleveland* v. *State Bank of Ohio,* 16 Ohio St., 236, 88 Am. Dec., 445, and *Lewis* v. *Anderson,* 20 Ohio St., 281. It is recently stated in *Warner & Co.* v. *Brua,* 33 Ohio App., 84, 87, 168 N. E., 571, that, ''The general rule is that past consideration will not support a promise.''

The indemnity company not having taken any action altering its legal position cannot now maintain that its precedent debt formed a present consideration unless it be true, as further urged, that its forbearance to sue constituted such a consideration.

It is said in Elliott on Contracts, Volume 1, Section 234, that: ''An agreement to forbear the exercise of a right for a definite or a reasonable time is sufficient consideration for a promise where the forbearance is granted upon request and because of a return promise. The mere forbearance is not sufficient without some agreement, express or implied, but the circumstances may be such that an agreement may be implied.''

We are unable to learn that any Ohio court has considered the question of whether or not a forbearance to sue with no fixed time may have implied as a part of the agreement a reasonable time, unless it be the case of *Andrews* v. *Campbell,* 36 Ohio St., 361, 369; and 9 Ohio Jurisprudence, 294, as do other authorities, lists this case as authority for the rule in this state that ''a promise to forbear suit is not sufficient consideration where no definite time of forbearance is fixed.''

It is not pleaded or stipulated that Schlade made a request for forbearance; nor do the facts disclose

that Radiator did forbear. The averments of the petition lead one to believe that O'Neal was following instructions of the radiator company to secure the stock and sell it for Radiator's benefit; for the answers aver that immediately upon deposit of the stock O'Neal notified the defendant company, and it and O'Neal entered into an agreement to forbear suit. It therefore does not seem that a promise to forbear was made direct to Schlade. In fact, the facts taken in conjunction with the averments of the pleadings rather lead us to the view that the matter of forbearance was an afterthought; and we do not think that the facts warrant the implication that forbearance for a reasonable time was intended and understood. This being true, we feel bound to apply the rule announced in *Andrews* v. *Campbell, supra,* and to hold that such forbearance does not constitute a valid consideration, and is not such as to make the defendant company a holder for value in due course, and we apply the rule announced in 6 Thompson on Corporations (3rd Ed.), Section 4251, to this effect: ''The pledgee of stock to secure an antecedent debt of the pledgor is not a *bona fide* purchaser for value and therefore holds it subject to any lien, which is valid against the pledgor, though he had neither actual nor constructive notice thereof.''

Keeping in mind that the averments and prayer of the cross-petition invoke equitable remedies and relief, another very good reason advances itself why the defendant company should not have secured a decree in its favor.

It is well recognized that acts that are constructively fraudulent, and are done without intent or

knowledge to harm another, are in certain instances sufficient to make voidable agreements that otherwise are enforceable in law or equity.

In the instant case we have facts disclosed which show that officers of the radiator company, together with its attorney, procured a pledge of the company's stock from another officer of the company, who, at the time, was an embezzler of the company's funds, and who was, no doubt, at the time laboring under a considerable pressure by reason of fear or threat of criminal prosecution; and at the same time this officer, Schlade, was the agent of his prior pledgee to sell and dispose of the stock for the plaintiff's benefit. It also is a conceded fact that Schlade, the pledgor and agent of plaintiff, procured possession of the stock from plaintiff by reason of communicated solicitations on the part of Radiator officials to purchase the stock; and that like solicitations caused its delivery by Schlade to Radiator's agent, O'Neal, for purchase by one of Radiator's officers.

Further, the facts do not show that these officers of Radiator ever made any attempt to purchase this stock; but one thing seems to have been promptly done, that is the indemnity company was promptly notified. For what purpose? The answer can only be—for its protection. Radiator was not alarmed or little concerned, as it was fully protected by its contract of indemnity. The defendant company had knowledge of the defalcation, and it, no doubt, was the aggressor in seeking to make itself whole, and at best it stands in no cleaner shoes than those worn by Radiator.

It is said in Pomeroy's Equity Jurisprudence (4th Ed.), Volume 2, Section 951, that: "The doctrine of

equity concerning undue influence is very broad, and is based upon principles of the highest morality. It reaches every case, and grants relief 'where influence is acquired and abused, or where confidence is reposed and betrayed.' "

The relationship existing between officers of a corporation is one of confidence and fair dealing, and calls for full disclosures. And it is not the law that the superior officer, by virtue of his higher position, may exercise his office so as to procure advantage over a minor officer, even if that one be a defaulter, and this must have particular force when that officer has in his possession, as agent, the property of his principal, a third party, even if that fact be not known to the superior official, for in such case the undue influence of the superior officer is, in fact, exercised and visited upon the agent's principal.

The same authority further says, in Section 956: "While equity does not deny the possibility of valid transactions between the two parties, yet because every fiduciary relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and of thereby overcoming the presumption."

The same authority quotes with approval from the leading case of *Tate* v. *Williamson*, L. R., 1 Eq., 528, 536, as follows: "Wherever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed

by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, *although the transaction could not have been impeached if no such confidential relation had existed."*

We are of opinion that the failure of the plaintiff company to procure the indorsement of Schlade to the certificates, or to note thereon its special interest therein, upon its second delivery of the stock to Schlade, cannot be decisive of this action; for it is apparent that the acts and solicitations of the defendant company officials induced the plaintiff to part with its possession. And it surely is not the law that one may be permitted to assert the doctrine of estoppel by reason of those acts or omissions, as in this case, which were induced and solicited to be done by it, even though they were done without knowledge of the rights of others.

It therefore is the conclusion of this court that the plaintiff company may invoke the provisions of Section 8673-7 of the Code, wherein it is provided that a certificate may be reclaimed and the transfer rescinded if its indorsement or delivery was procured by fraud and without the owner's authority.

And it is likewise the view of this court that the defendant company has failed to overcome the presumption raised against the radiator company, and that it has failed to establish its right to the relief sought by that degree of proof imposed upon it.

It must follow that the judgment will be reversed, and the plaintiff is found entitled to possession of the stock in question, and it is ordered that the clerk

of this court shall deliver the same to it; and final judgment is entered in favor of the plaintiff company.

*Judgment reversed and judgment for plaintiff in error.*

LEMERT and MONTGOMERY, JJ., concur.