Argued March 2, affirmed April 13, 1966

# MacNAB *v.* FIREMAN'S FUND INSURANCE COMPANY, INC.

413 P. 2d 413

*Raymond J. Conboy,* Portland, argued the cause for appellant. With him on the brief were Hollister & Thomas and Robert H. Hollister, Portland.

*James F. Spiekerman,* Portland, argued the cause for respondent. With him on the brief were Mautz, Souther, Spaulding, Kinsey & Williamson and Wayne A. Williamson, Portland.

Before McALLISTER, Chief Justice, and PERRY, DENECKE, HOLMAN and LUSK, Justices.

HOLMAN, J.

Plaintiff was an independent insurance agent. He represented, among others, the defendant insurance company. They had a written agreement which required that "risks previously canceled * * * may be bound only if previously approved by the Company."

For many years plaintiff had handled all insurance matters for a man by the name of Darr. His liability insurance business was of some consequence and had been placed with defendant by plaintiff for some considerable time. Darr had a son, Joe, who had been designated by the company as an insured in Darr's liability policy. However, an endorsement removed Joe from coverage in February of 1960 because he was involved in two serious accidents within a short period of time. Thereafter Joe went to Europe. He returned in the spring of 1961 and Darr called plaintiff to have his son reinstated as an insured under his policy.

Plaintiff contacted defendant to obtain its consent to reinstate Joe. At first coverage was refused but there is evidence from which it could be found that the company granted coverage for an indefinite time until it made up its mind whether it wanted to cover Joe permanently under Darr's policy. Thereafter, on July 7, 1961, after considerable discussion and correspondence between plaintiff and the senior underwriter in the Portland office, defendant wrote a letter to plaintiff as follows:

"As we have not heard from you for some time on the subject of the young driver, Joe Darr, we are wondering if you have been successful in replacing the boy's coverage with another carrier.

"In the event that the situation remains the

same, perhaps we could issue an endorsement restricting the boy's driving to a certain class of vehicle while that vehicle is used in the father's business, such as automobiles of the pickup or panel truck class. This would more clearly outline the extent of coverage in the event of a claim.

"There is also, of course, the alternative should the father reregister the GMC Suburban vehicle in the name of the boy, as the boy would be using this vehicle in the father's business, and, of course, place the coverage in the Assigned Risk Pool.

"We would like you to bring us up to date on this subject as, *at the present time, the boy is excluded from the policy.*

"Thank you for your early reply." (Emphasis ours).

Plaintiff replied as follows on July 17:

"I thought this had been put to bed. Kircher & Ghelfi [special agents of the company] came in after your last letter & I told them it was either we do or we don't on this one. Since then I have heard nothing. I'd like to know what gives."

There were no further communications between the parties concerning this matter. Plaintiff stipulated that in fact the special agents mentioned in his letter of July 17 called upon him prior to the July 7 letter of defendant instead of subsequent thereto. He said that he told the special agents that as far as he was concerned the company "was still on the risk and that I would like to know where I stood on it, * * * if they were going to stay on the risk, just leave things the way they were." He told the agents he would have to place all of Darr's business someplace else if Joe was not accepted as a permanent insured under Darr's policy.

On November 3, Joe was involved in a serious acci-

dent caused by his negligence. Defendant denied coverage and Darr threatened to sue plaintiff because of lack of coverage. Plaintiff thereafter paid, upon behalf of Darr, what the company was liable to pay if Joe was covered by Darr's liability policy. He thereafter brought this action to recover the sums paid on Darr's behalf. Plaintiff appealed from a judgment of involuntary nonsuit.

Plaintiff claims Darr was entitled to recover against the company because Joe was covered under the policy. He contends the company had agreed to cover Joe for the period in which the accident occurred and, in any event, there was coverage because Darr had never received a cancellation notice of the termination of Joe's temporary coverage as required by the policy. He says that he is subrogated to Darr's rights and is not a volunteer in making payment because defendant wrongfully denied coverage which jeopardized his customer's continued patronage. He contends that he therefore had a financial interest which he was entitled to protect. He argues that even if it is held that he violated his agency contract with defendant in covering Joe at the time of the accident, he would still be entitled to be placed in Darr's position upon the payment of Darr's claim.

■■ Defendant's letter of July 7, followed by four months of silence, could only be treated by plaintiff as notice to him of the termination of the period of grace during which there was temporary coverage. It was, therefore, plaintiff's obligation to the company, under the agency agreement, to place the coverage with another company. Plaintiff had no authority to bind defendant on the risk without defendant's consent after the limited consent had been withdrawn. Plaintiff had no authority to bind defendant for a

period not authorized. There was no jury question presented whether defendant had authorized coverage at the time of the accident.

■ Presuming (1) that as to Darr plaintiff had apparent rather than actual authority to bind defendant, (2) that Darr was entitled to a notice of cancellation of Joe's coverage before it could be terminated, and (3) that Darr therefore had a valid claim against defendant, plaintiff would still not be entitled to be subrogated to Darr's rights against defendant. Subrogation is a doctrine of equitable origin and nature and its application is controlled by principles of equity rather than by strict legal rules. 50 Am Jur 689, Subrogation § 11 (1944). Before a party is entitled to subrogation, his equity must be strong and his case clear. *United States F. & G. Co. v. Bramwell,* 108 Or 261, 277-278, 217 P 332 (1923); *American Sur. Co. v. Multnomah County,* 171 Or 287, 318, 138 P2d 597 (1943). In effect, plaintiff is contending that he can recover from the company an amount of money he paid to a third party on the company's behalf even though its liability to the third party was created by plaintiff's violation of his agency contract with the company. Equity will not allow one whose wrongdoing has caused a loss to shift the burden to another on whose apparent behalf he was acting without actual authority. An equitable remedy should not be used to accomplish an inequitable result.

■ Plaintiff contends defendant cannot raise the issue that he violated his agency agreement because such a defense was not pleaded. Plaintiff alleged he was subrogated to Darr's rights against defendant under the policy. This was denied by a general denial which was part of defendant's answer. Plaintiff's subrogation to Darr's rights depended upon whether he was

acting within his agency agreement. The issue could therefore be raised under a denial of subrogation.

■ Plaintiff has two other claims of error. One was a ruling adverse to plaintiff on the admissibility of evidence by which plaintiff attempted to prove defendant made admissions that coverage was in effect on Joe at the time of the accident. The other was a ruling against plaintiff on plaintiff's right to examine defendant's file to see if there was correspondence between the Portland and San Francisco offices indicating that there was coverage. The plaintiff was not seeking evidence in either instance to prove he had authority from the company to cover Joe during the period the accident occurred. Rather, he was seeking to prove the company was liable for the coverage. It is unnecessary to rule upon these specifications of error as they both go to the question of whether defendant was bound on the risk. Even if defendant were bound on the risk, we have denied subrogation because plaintiff exceeded his authority.

The judgment of the trial court is affirmed.