Argued and submitted May 23, affirmed October 24, 1990

# D. Clayton GANGNES
## and Donna L. Gangnes,
*Appellants,*

*v.*

## Clyde E. LANG,
*Respondent.*

(87-180-J-3; CA A60217)·

799 P2d 670

John R. Hanson, Medford, argued the cause and filed the briefs for appellants.

Douglas M. Engle, Medford, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs appeal a declaratory judgment denying rescission of one agreement, voiding another, denying damages for breach of fiduciary duty and finding that plaintiffs are obligated for contribution to defendant. We affirm.

The proceedings are essentially equitable in nature. The primary remedies sought are rescission and restitution or specific enforcement, all equitable remedies. The damages sought were dependent on the granting of one of the equitable remedies. Defendant counterclaimed for contribution.

The parties organized a number of corporations that by 1985 were in serious financial trouble. In the spring of 1985, the parties executed a series of documents purporting to divide their various business interests. Only three of the writings are at issue here: a stock sale agreement (Agreement); an "ADDENDUM TO STOCK SALE AGREEMENT" (Addendum); and a third, which the parties refer to as a "Buy Back Agreement" (Buy Back). The declaratory judgment action involved a determination of the rights and liabilities of the parties under those writings.

The questions presented on appeal are rather convoluted. The amended complaint contained two requests for relief. The first was for a judgment that plaintiffs are 50 percent shareholders of Lang & Gangnes Corporation (Medply). To reach that conclusion the trial court would have had either to rescind the Agreement or to specifically enforce the Buy Back. The court held that the Agreement was valid and enforceable and not subject to rescission and that the Buy Back was void and, hence, that specific enforcement was not available. Plaintiffs assign error to those rulings. The second request for relief was for compensatory and punitive damages for an alleged breach of defendant's fiduciary duty to plaintiffs. To prevail on that claim, plaintiffs had to prevail on one of the two equitable claims. The court, accordingly, denied them damages. Plaintiffs also assign error to that ruling. Plaintiffs' last assignment of error is that the trial court improperly awarded contribution to defendant on his counterclaim.

The parties had been equal owners of a number of small timber-related corporations; plaintiffs owned 50 percent and defendant owned 50 percent. Two of those corporations

are related to this dispute, although neither of them is a party; Lang & Gangnes Corporation (Medply), and Stateline Forest Products, Inc. (Stateline). In 1985, Stateline was being liquidated in a bankruptcy proceeding. The parties were personally liable for approximately $800,000 of Stateline's debt. Medply was also in serious financial trouble, and the parties were personally liable for 1.2 million dollars of its debts.

. In March, 1985, plaintiffs agreed to sell their 50 percent interest in Medply to defendant. They executed the Agreement, dated April 3, 1985, providing for the sale of the stock to defendant for $40,000 on an installment contract. Defendant agreed to hold plaintiffs harmless "from all existing debts for which the sellers (Gangnes) have any personal liability whatsoever." The stock certificate evidencing plaintiffs' 50 shares of stock was signed by both plaintiffs and was given to defendant, but he did not make the payments required by the Agreement. Plaintiffs did not request relief in the form of a judgment for the amount owed, but rather sought a declaration that the Agreement should be rescinded for a "material breach" and that they be restored to 50 percent ownership of Medply.

■ Although in some instances a failure to pay for property might justify rescission of the sale contract, in this case the property has greatly increased in value, due to the extraordinary efforts of defendant.[1] On these facts, it would be inequitable to rescind the stock sale agreement. "An equitable remedy should not be used to accomplish an inequitable result." *MacNab v. Fireman's Fund Ins. Co.*, 243 Or 267, 272, 413 P2d 413 (1966). Plaintiffs have a claim for the payment due under the contract that will allow them to realize fully the benefit for which they bargained, but no more.

Plaintiffs' other grounds for claiming rescission do not warrant discussion.

■ The next writing at issue is the Addendum. It was signed by the parties on May 20, 1985, and contained terms obligating Medply to make certain payments to plaintiff

[1] The record indicates, for example, that defendant traveled round trip to Portland from Medford *daily,* for a period of several months, in order to pay suppliers in cash so that Medply could continue to operate.

Clayton Gangnes. The court held that the Addendum obligated Medply but imposed no personal liability on defendant. Medply is not a party in this action. On appeal, plaintiffs do not argue that the ruling was erroneous, but rather that, if the Addendum is void, that also renders the original stock sale Agreement void as a matter of law. That argument evidences a misunderstanding of the trial court's decision. The Addendum was not determined to be void, but only unenforceable against Lang, the only defendant.

■        Plaintiffs also assign error to the trial court's holding that the Buy Back is a nullity. The Buy Back, dated November 30, 1986, and signed by Clayton Gangnes and Lang, provides that Lang agrees to sell a 50 percent interest in Medply back to plaintiffs for the sum of $5,000 and cancellation of the note due plaintiffs under the original Agreement for sale of the stock. Plaintiffs contend that the trial court invalidated the Buy Back solely because it believed that defendant had not read it before signing it. Plaintiffs cite *Lawrence v. Peel,* 45 Or App 233, 607 P2d 1386 (1980), for the proposition that failure to read a document before signing it will not excuse a party from its obligations under a contract.

However, the circumstances surrounding the signing of the Buy Back are not as straightforward as plaintiffs contend. Defendant's evidence was to the effect that the paper that he signed was blank when he signed it and that the substance of the document was added later. He stated that there had been no such agreement. Plaintiffs' evidence was that a Buy Back was discussed and that defendant signed the completed document. They presented a documents examiner who testified that, in his opinion, the text of the document was not added after the signatures were affixed. The trial court specifically found defendant's version more credible. We defer to a trial court's findings of historical facts when they are based on its ability to evaluate the witnesses' demeanor, as in this case. When a party signs a purported agreement and material terms are added later without authorization, those terms are not enforceable. *Mallory et ux v. Ching,* 230 Or 239, 369 P2d 734 (1962). There is no question but that the terms added after defendant signed the paper were material. There was no Buy Back to specifically enforce.

■ Plaintiffs next assign error to the denial of compensatory and punitive damages for defendant's breach of fiduciary duty. Without some special relationship between parties, no fiduciary duty exists. The relationship that plaintiffs rely on to impose a fiduciary duty is that of co-shareholders in a close corporation. However, when plaintiffs sold their shares to defendant on April 3, 1985, that relationship was terminated. All of the alleged breaches of fiduciary duty occurred after the sale. Therefore, when the acts complained of occurred, there was no fiduciary relationship to be breached. The trial court properly rejected the claim.

■ Plaintiffs next assign error to the trial court's award of contribution to defendant. Defendant, in his counterclaim, sought contribution from plaintiffs for debts of Stateline that he had paid that were the joint obligations of the parties. Plaintiffs contend that, if the Agreement is not rescinded, it absolves them of "any personal liability whatsoever." The trial court concluded, and we agree, that the Agreement regarding the sale of Medply did not absolve them of personal liability for the debts of Stateline.

Affirmed.