THOMPSON, Appellant,

v.

CENTRAL OHIO CELLULAR, INC., f.k.a. CELLWAVE, INC., et al., Appellees.

[Cite as *Thompson v. Cent. Ohio Cellular, Inc.* (1994), 93 Ohio App.3d 530.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64545.

Decided Feb. 28, 1994.

532

*Jones, Day, Reavis & Pogue, Richard I. Werder, Jr., Randal S. Baringer* and *Elizabeth A. Grove,* for appellant.

*William F. Gerstenslager* and *John J. Horrigan,* for appellees.

DONALD C. NUGENT, Judge.

This is an appeal from the decision of the Cuyahoga County Court of Common Pleas, which granted the motion to dismiss filed by the defendants-appellees.

Plaintiff-appellant William J. Thompson (hereinafter "appellant") initiated the present action through the filing of his complaint on June 10, 1992. Appellant named as defendants Cellwave, Inc. (now known as "Central Ohio Cellular, Inc."), James F. Burke (a director and shareholder of Cellwave), John T. Horrigan (Chairman of Cellwave's Board of Directors and shareholder), Susan K. Van Buren (a director and shareholder of Cellwave), and Bernard F. Zaucha (Cellwave's Treasurer, a member of the board of directors, and a shareholder). Appellant's complaint alleged causes of action for breach of fiduciary duties (Count I), breach of good faith and fair dealing (Count II), and fraud (Count III).

The gist of appellant's complaint alleges that Cellwave (an Ohio corporation which, for federal income tax purposes, has elected to be treated as an "S corporation") and the individual defendants manipulated the financial results of Cellwave for 1991 and reported those results to the Internal Revenue Service ("IRS") in such a way as to shift a significant tax burden properly borne by the individual defendants and other shareholders of Cellwave in 1992 to appellant in 1991. The associated taxable income was the result of a transaction in which Cellwave sold the majority interest in its Michigan system (appellees refer to this as the "Michigan 9" interest, see appellees' motion to dismiss) on March 11, 1992. Appellant alleges that Cellwave and the individual defendants improperly caused this transaction to be treated as having produced 1991 income without any legitimate business or legal justification and for the sole purpose of harassing, annoying and embarrassing him. Appellant further alleges he called the improp-

er tax treatment to the attention of Cellwave and the individual defendants on several occasions; he provided extensive authority and analysis showing it to be wrongful, improper and legally unjustified; and he requested that Cellwave and the individual defendants correct the error and provide the corrected information to the IRS. Defendants, however, have refused to do so.

In his complaint, appellant alleges that he was a shareholder of Cellwave owning forty-four shares of Cellwave's common stock. On November 8, 1991, he sold all of his stock in Cellwave to the individual defendants and several other Cellwave shareholders. It is undisputed that appellant was a shareholder of Cellwave for purposes of Cellwave's 1991 tax return and, under applicable provisions of the Internal Revenue Code (the "IRC"), and IRS regulations, he should have been allocated a pro-rata share of Cellwave's 1991 net income or loss. Appellant currently owns no stock in Cellwave and will have none of Cellwave's 1992 income or expenses allocated to him.

On April 1, 1992, Cellwave provided appellant with an allegedly improper and unlawful IRS Schedule K–1, which reflected, among other things, an allocation to him of $6,459,644 of net long-term capital gain for 1991. Appellant alleged that this allocation was based on an improper and unlawful purported realization and recognition of at least approximately $12 million and as much as approximately $14 million in net long-term capital gain on Cellwave's 1991 federal income tax return.

Appellant's complaint adds that as of November 8, 1991, when the sale of his stock in Cellwave became effective, Cellwave had earned no significant taxable income during 1991. Appellant stated that Cellwave claimed to have earned approximately $14 million in taxable income before December 1, 1991 by virtue of two transactions in which it disposed of its Michigan system. The first transaction closed on November 18, 1991. The second transaction, however, was subject to, and could not be consummated without, the approval of the Federal Communications Commission ("FCC"), which approval was not obtained until February 5, 1992. Thereafter, the second transaction did not close until March 11, 1992. Appellant adds that Cellwave and the individual defendants asserted that these two transactions constituted "one integrated transaction" that, for tax purposes, occurred in 1991.

Appellant's complaint alleges that under the applicable provisions of the IRC, IRS regulations, and controlling authority, the proceeds of the sale of the Michigan assets were not properly includable in Cellwave's 1991 taxable income. More specifically, appellant alleges that the "defendants have contended, with no proper basis whatsoever, that the two sales were 'one integrated transaction,' subject to 'installment sale' treatment under applicable provisions of the Code and IRS regulations. They have purportedly 'elected out' of installment sale tax

treatment so as to treat all of the income received by Cellwave in connection with the two sales, including that received in 1992, as 1991 income."

As a result, appellant alleges that Cellwave's 1991 taxable income was overstated by at least approximately $12 million and as much as approximately $14 million. Further, as a result of the "pass-through" nature of a Subchapter S corporation, Cellwave overstated appellant's 1991 taxable income by at least $5,524,934 and by as much as $6,459,644, and improperly reported this inflated taxable income to the IRS. Appellant contends that the improper and unlawful actions of Cellwave and the individual defendants were designed to shift a significant tax burden properly borne by the individual defendants and other Cellwave shareholders in 1992 to appellant in 1991.

Appellant's complaint further states that on May 4 and May 19, 1992, appellant requested Cellwave and the individual defendants to correct Cellwave's 1991 federal income tax return and the Schedule K–1 provided to him so that he could file his own income tax return without incurring significant unnecessary expense and without the risk of adverse consequences with the IRS. Cellwave and the individual defendants, however, refused to do so.

With respect to his claim for breach of fiduciary duties, appellant made the following allegations:

"20. In preparing or causing the preparation of Cellwave's 1991 federal income tax return and Thompson's related Schedule K–1 attributing taxable income to him by virtue of his status as a Cellwave shareholder, Cellwave and the Individual Defendants owed Thompson fiduciary duties of care, honesty, and loyalty.

"21. By virtue of the conduct described above, Cellwave and the Individual Defendants breached their fiduciary duties to Thompson. In addition, Cellwave aided and abetted the Individual Defendants' breach of fiduciary duties. Defendants' conduct has been intentional and malicious and purposefully designed to injure Thompson.

"22. As a proximate result of the breaches of fiduciary duty described herein, Thompson has been damaged in an amount to be proved at trial."

Finally, with respect to his claim for fraud, appellant made the following allegations:

"28. In preparing or causing the preparation of Cellwave's 1991 federal income tax return and Thompson's related Schedule K–1, Cellwave and the Individual Defendants have made false statements with knowledge of their falsity and with the intent and in the expectation that they would be relied on by Thompson and the IRS. In particular, they have overstated Cellwave's 1991 taxable income on Cellwave's federal income tax return and the accompanying

schedules filed with the IRS, and have, in those same documents, overstated Thompson's 1991 taxable income and attributed to him significant 1991 tax liability properly borne by the Individual Defendants and other shareholders of Cellwave in 1992.

"29. By virtue of the conduct described above, Cellwave and the Individual Defendants have defrauded Thompson and the IRS. Defendants' conduct has been intentional and malicious and purposefully designed to injury Thompson.

"30. As a proximate result of the fraud described herein, Thompson has been damaged in an amount to be proved at trial."

In response to appellant's complaint, the defendants filed a joint motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6). Defendants' motion sought dismissal of all three counts in appellant's complaint. In defendants' brief in support of their motion, and without support from outside evidentiary materials, appellees explained that Cellwave was awarded two cellular communications licenses from the FCC. The sale of Cellwave's "Michigan 9" license was the result of a negotiated agreement stemming from a federal lawsuit brought by the individual defendants (appellees refer to them as the "Federal plaintiffs") in the instant suit against appellant for securities fraud in violation of federal securities law. Appellees claim the comprehensive agreement was embodied in a series of integrated documents. However, appellant did not attach any of these agreements to his complaint, and defendants did not attach any of these agreements to their brief in support of their motion. According to appellees, it was pursuant to these comprehensive agreements that appellant sold his shares of Cellwave to the individual defendants herein (plaintiffs in the federal suit) and resigned as President and Director of Cellwave. Further, the defendants herein sold the Michigan system to the highest bidder.

Appellees argued that they fully discharged the duties imposed upon them by virtue of the settlement documents between them and appellant. Appellees further argued that they owed appellant no further duty than what was imposed upon them by the express provisions in the settlement agreement which they claimed specifically limits all future rights and responsibilities relative to appellant's stock ownership in Cellwave.

With respect to Cellwave's election not to apply the "installment sales rule" of the IRC to the payments received by Cellwave on the sale of Michigan 9 in March 1992 (which had the effect of causing the sale of such asset as being made in 1991 and thereby reflected as income attributable to appellant on the "per share per day" rule), appellees contended that such decision was a proper exercise of the board of director's sound business judgment.

With respect to appellant's claim for breach of fiduciary duty, appellees argued that they owed no duty to appellant since, at the time of Cellwave's election not to apply the installment sales rule to payments received by Cellwave on the sale of Michigan 9 (which was made in March 1992), appellant had sold his entire interest in Cellwave and was no longer a shareholder. Appellees contended that pursuant to R.C. 1701.59(B), the only fiduciary duty owed by the defendants was to the corporation and its stockholders, collectively. In short, appellees contended they owed no fiduciary duty to appellant because appellant was not a shareholder in Cellwave when Cellwave's federal income tax return was prepared and Cellwave elected out of the installment sales rule.

Finally, with respect to appellant's claim for fraud, appellees argued that appellant was unable to set forth facts with sufficient particularity, see Civ.R. 9(B), to set forth the element of justifiable reliance. Appellees contended that appellant's pleading of facts demonstrating that appellant had called the improper tax treatment to the attention of Cellwave and the individual defendants on several occasions and the defendants' refusal to provide any justification for their position refutes any assertion that appellant justifiably relied on the false representations contained in the K-1 report.

Based on the foregoing, the trial court granted appellees' motion to dismiss.[1] Appellant timely appeals, raising the following assignments of error for our review:

"I. The trial court erred in dismissing, without opinion and without leave to amend, plaintiff's breach of fiduciary duty claim, based on a motion that did not accept as true the complaint's well-pleaded allegations and that instead relied heavily on denials of pleaded facts and new material not pleaded in the complaint.

"II. The trial court erred in dismissing, without opinion and without leave to amend, plaintiff's fraud claim, based on a motion that did not accept as true the complaint's well-pleaded allegations and that instead relied heavily on denials of pleaded facts and new material not pleaded in the complaint."

I

Initially, in appellant's first and second assignments of error, appellant argues that the trial court erred in dismissing his complaint without opinion and without leave to amend his complaint.

---

1. The trial court's order dismissed all three counts of appellant's complaint. Appellant, however, assigns error only to the court's dismissal of Counts I and III. The trial court's order dismissing Count II (breach of good faith and fair dealing) is not being appealed and, therefore, remains final.

A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 605 N.E.2d 378. It is well settled that "when a party files a motion to dismiss for failure to state a claim, all the factual allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the nonmoving party." *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 60, 565 N.E.2d 584, 589, citing *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 756. However, while the factual allegations of the complaint are taken as true, the same cannot be said about unsupported conclusions. "Unsupported conclusions of a complaint are not considered admitted, * * * and are not sufficient to withstand a motion to dismiss. * * * " (Citations omitted.) *State ex rel. Hickman v. Capots* (1989), 45 Ohio St.3d 324, 544 N.E.2d 639.

In resolving a Civ.R. 12(B)(6) motion, courts are confined to the averments set forth in the complaint and cannot consider outside evidentiary materials unless the motion is converted, with appropriate notice, into one for summary judgment under Civ.R. 56. *State ex rel. Baran v. Fuerst* (1990), 55 Ohio St.3d 94, 563 N.E.2d 713. In order for a court to grant a motion to dismiss for failure to state a claim, it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 245, 71 O.O.2d 223, 224, 327 N.E.2d 753, 755.

Appellant first contends that the trial court should have issued an opinion when granting appellees' motion to dismiss in order to provide "guidance as to any perceived pleading defects." However, it is well settled that the trial court has no obligation to issue a written opinion when granting a Civ.R. 12(B)(6) motion to dismiss. *State ex rel. Drake v. Athens Cty. Bd. of Elections* (1988), 39 Ohio St.3d 40, 528 N.E.2d 1253; *Vrabel v. Vrabel* (1983), 9 Ohio App.3d 263, 9 OBR 477, 459 N.E.2d 1298.

Appellant cites *State ex rel. Scanlon v. Deters* (1989), 45 Ohio St.3d 376, 377, 544 N.E.2d 680, 681–682, for the proposition that the presence of "extraneous facts" before a lower court on a motion to dismiss creates the presumption that the court treated the motion as one for summary judgment. We disagree. In *Scanlon,* the appellate court overruled the defendant's motion to dismiss Scanlon's mandamus complaint on 12(B)(6) grounds. The court then dismissed Scanlon's complaint *sua sponte* on the grounds that Scanlon had an adequate remedy at law. The court's conclusion that Scanlon had an adequate remedy at law was based on matters outside the pleadings. Moreover, both parties submitted matters outside the pleadings, and Scanlon urged the lower court to treat the

motion to dismiss as a motion for summary judgment. The Supreme Court, in affirming the "dismissal," held that the lower court actually granted a summary judgment. In the present case, neither party has submitted evidentiary materials outside the pleadings (although appellees' brief does contain factual allegations outside the pleadings), nor has either party requested that the trial court treat the motion as one for summary judgment. Finally, we do not read *Scanlon* as creating a "presumption" that the lower court has treated a motion to dismiss as a motion for summary judgment, where the motions have presented "extraneous facts." Rather, it is a seminal point of appellate law that the judgments of the lower courts are presumed valid. *Makranczy v. Gelfand* (1924), 109 Ohio St. 325, 142 N.E. 688. Thus, in the absence of some showing to the contrary, there is a presumption that a trial court performed its duty and did not rely upon anything in reaching its decision that it should not have relied upon. *Columbus v. Guthman* (1963), 175 Ohio St. 282, 25 O.O.2d 115, 194 N.E.2d 143. See, also, *Boyd v. Edwards* (1982), 4 Ohio App.3d 142, 150, 4 OBR 234, 243–244, 446 N.E.2d 1151, 1159–1600, and *State v. Coombs* (1985), 18 Ohio St.3d 123, 125, 18 OBR 153, 154–155, 480 N.E.2d 414, 416–417. While we acknowledge that appellees' motion, as well as the brief before this court, presents "extraneous facts," this court will presume that the trial court based its decision solely on the face of the complaint.

Appellant also argues the trial court prematurely granted appellees' motion to dismiss without granting him leave to amend his complaint. The Ohio Supreme Court has recently noted that "[i]f a motion for failure to state a claim is sustained, 'leave to amend the pleadings should be granted unless the court determines that allegations of other statements of facts consistent with the challenged pleading could not possibly cure the defects.'" *Hanson, supra,* 65 Ohio St.3d at 549, 605 N.E.2d at 381, citing McCormac, Ohio Civil Rules of Practice (2 Ed.1992) 150, Section 6.20. However, appellant failed to seek leave of court to amend his pleadings. See Civ.R. 15(A). Moreover, a review of appellant's complaint leads this court to conclude that allegations of other facts consistent with the challenged pleading would not cure any defects in the pleadings.

Appellant next argues that the trial court committed reversible error in granting appellees' motion to dismiss on Count I of his complaint for breach of fiduciary duties. Appellant contends that the defendants owed him a fiduciary duty. Appellant bases the fiduciary relationship on the "formal relationship" of corporation and shareholder or on " 'a somewhat more informal one' of corporation and former shareholder who remained dependent on the corporation for fair and accurate calculation and reporting of his taxable income." Appellees respond by arguing that, on the face of the complaint, the alleged breach of fiduciary duty occurred in April 1992, when appellant was no longer a Cellwave shareholder.

Appellees point to the factual allegations of the complaint, which establish that appellant sold all of his stock in Cellwave in November 1991 pursuant to a written contract executed in July 1991.

The creation of a fiduciary duty may arise out of contract or out of an informal relationship where both parties understand that a special trust or confidence has been reposed. *Stone v. Davis* (1981), 66 Ohio St.2d 74, 78, 20 O.O.3d 64, 66–67, 419 N.E.2d 1094, 1097–1098; *Umbaugh Pole Bldg. Co. v. Scott* (1979), 58 Ohio St.2d 282, 12 O.O.3d 279, 390 N.E.2d 320. " 'A "fiduciary relationship" is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.' " *Stone, supra,* quoting *In re Termination of Emp.* (1974), 40 Ohio St.2d 107, 115, 69 O.O.2d 512, 517, 321 N.E.2d 603, 609. A person who occupies a fiduciary relationship to another acts as an agent to that person and owes the utmost loyalty and honesty to the principal. *Testa v. Roberts* (1988), 44 Ohio App.3d 161, 165, 542 N.E.2d 654, 659.

It is axiomatic that corporations and their officers and directors occupy a fiduciary relationship with corporate shareholders. *Crosby v. Beam* (1989), 47 Ohio St.3d 105, 548 N.E.2d 217; *Gries Sports Enterprises, Inc. v. Cleveland Browns Football Co.* (1986), 26 Ohio St.3d 15, 26 OBR 12, 496 N.E.2d 959. It is a general rule of law that, in a close corporation, the majority shareholders have a fiduciary duty to minority shareholders. *Crosby, supra,* 47 Ohio St.3d at 108, 548 N.E.2d at 220, citing *Jones v. H.F. Admanson & Co.* (1969), 1 Cal.3d 93, 81 Cal.Rptr. 592, 460 P.2d 464. Generally, absent a legitimate business purpose, all shareholders are to have an equal opportunity to share in the benefits of a corporation. *Crosby, supra,* 47 Ohio St.3d at 108–109, 548 N.E.2d at 220–221; *United States v. Byrum* (1972), 408 U.S. 125, 138, 92 S.Ct. 2382, 2391, 33 L.Ed.2d 238, 248; *Donahue v. Rodd Electrotype Co. of New England, Inc.* (1975), 367 Mass. 578, 598, 328 N.E.2d 505, 518; *Tillis v. United Parts, Inc.* (Fla.App.1981), 395 So.2d 618; *Alaska Plastics, Inc. v. Coppock* (Alaska 1980), 621 P.2d 270; and *Wilkes v. Springside Nursing Home, Inc.* (1976), 370 Mass. 842, 353 N.E.2d 657. The fiduciary duties owed by majority shareholders is "heightened" when the corporation is a close corporation. *Crosby, supra,* 47 Ohio St.3d at 108, 548 N.E.2d at 220.

Directors of a corporation, as are the individual defendants herein, owe a fiduciary duty to the corporation and to the corporation's shareholders, collectively. R.C. 1701.59(B) defines a director's fiduciary duties as follows:

"A director shall perform his duties as a director, including his duties as a member of any committee of the directors upon which he may serve, in good faith, in a manner he reasonably believes to be in or not opposed to the best

interests of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances.  * * *"

In considering the best interests of the corporation, a director must consider the interests of the corporation's shareholders, R.C. 1701.59(E), and may consider the interests of the corporation's creditors.  R.C. 1701.59(E)(1).  The fiduciary relationship between a corporation's directors and the corporation and its shareholders has also been described to include "a duty of good faith, a duty of loyalty, a duty to refrain from self-dealing and a duty to disclosure." *Wing Leasing, Inc. v. M & B Aviation, Inc.* (1988), 44 Ohio App.3d 178, 181, 542 N.E.2d 671, 676; see, also, *Apicella v. PAF Corp.* (1984), 17 Ohio App.3d 245, 247, 17 OBR 512, 514–515, 479 N.E.2d 315, 318; *Radol v. Thomas* (C.A.6, 1985), 772 F.2d 244, 256; *Bohannon v. Taylor* (1936), 52 Ohio App. 564, 570–573, 6 O.O. 482, 485–486, 4 N.E.2d 164, 167; *Nienaber v. Katz* (1942), 69 Ohio App. 153, 158–161, 23 O.O. 578, 579–580, 43 N.E.2d 322, 325; and *Kellogg–Mackey Co. v. O'Neal* (1931), 39 Ohio App. 372, 387, 177 N.E. 778, 783.

A review of appellant's complaint, on its face, reveals that at the time the defendants allegedly breached their fiduciary duties, appellant was no longer a shareholder of Cellwave.  Accordingly, a fiduciary relationship cannot be established here by way of contract or by way of the corporate entity.  Appellees argue that the "shareholder termination" rule, as found in *Squire v. Solinski* (1936), 132 Ohio St. 180, 183, 7 O.O. 257, 258, 5 N.E.2d 479, 481; *Gangnes v. Lang* (1990), 104 Ore.App. 135, 799 P.2d 670; *Kutchera v. Kutchera* (N.D.1971), 189 N.W.2d 680, 682; and *Kaminsky v. Kahn* (1967), 20 N.Y.2d 573, 285 N.Y.S.2d 833, 232 N.E.2d 837, results in the termination of all fiduciary relationships between a corporation, its directors, and its shareholders after a shareholder sells his stock in the corporation with respect to events occurring after the sale.  However, appellant counters by arguing that the corporation and its directors owe a continuing fiduciary duty to former shareholders with respect to the fair and accurate reporting of the corporation's financial results for the year in which appellant was a shareholder.  This continuing fiduciary relationship is underpinned by Cellwave's status as a Subchapter S corporation for income tax purposes.  By virtue of the "pass-through" nature of income received by a Subchapter S corporation to its shareholders,[2] appellant argues, to the extent that

---

**2.**  Any person who was a shareholder in an S corporation at any time during a taxable year is required to report to the IRS a pro-rata share of the corporation's *income*.  IRC, Section 1366(a) provides in pertinent part:

   "In determining the tax under this chapter of a shareholder for the shareholder's taxable year * * *, there shall be taken into account the shareholder's pro rata share of the corporation's

said income is treated as his personal income, the corporation and its directors continue to owe a fiduciary duty to consider his interests. R.C. 1701.59(E). Appellant adds that appellees breached their fiduciary duties when they elected out of the installment method[3] for computing Cellwave's 1991 income generated through the sale of the Michigan 9 assets, which has the effect of distributing said income to all 1991 shareholders pursuant to the "per share per day" rule.[4]

Therefore, the issue presented to this court is whether a corporation and its directors owe a continuing fiduciary duty to a former shareholder to fairly and

---

"(A) items of income * * * loss, deduction, or credit the separate treatment of which could affect the liability for tax of any shareholder * * *[.]"

The IRC spells out how each shareholder's pro-rata share is calculated. In the context of the termination of a shareholder's interest in an S corporation, like appellant's sale of his stock in Cellwave, the IRC gives the taxpayer a choice of how to calculate a shareholder's pro-rata share. The general rule is known as the co-called "per share per day" rule, and the exception to the general rule is called the "closing of the books method." IRC, Section 1377(a) provides:

"For purpose of this subchapter

"(1) In general. Except as provided in paragraph (2), each shareholder's pro rata share of any *item for any taxable year shall be the sum of the amounts* determined with respect to the shareholder

"(A) by assigning an equal portion of such item to each day of the taxable year, and

"(B) then by dividing that portion pro rata among the shares outstanding on such day.

"(2) Election to terminate year. Under regulations prescribed by the Secretary, if any shareholder terminates his interest in the corporation during the taxable year and all persons who are shareholders during the taxable year agree to the application of this paragraph, paragraph (1) shall be applied as if the taxable year consisted of 2 taxable years the first of which ends on the date of termination."

3. IRC, Section 453(a) provides:

"Except as otherwise provided in this section, income from an installment sale shall be taken into account for purposes of this title under the installment methods." ·

IRC, Section 453(b)(1) defines an "installment sale" as "a *disposition* of property where at least 1 payment is to be received after the close of the taxable year in which the *disposition* occurs." (Emphasis added.) However, IRC, Section 453(d)(1), which was added to the IRC in 1980, permits taxpayers the option or right *not* to apply the general rule:

"Subsection (a) shall not apply to any *disposition* if the taxpayer *elects* to have subsection (a) not apply to such *disposition*." (Emphasis added.)

Income Tax Regulation 15A.453–1(d)(2)(i) spells out the consequences of electing not to apply the general rule applicable to installment sales:

"A taxpayer who elects not to report an installment sale on the installment method must recognize gain on the sale in accordance with the taxpayer's method of accounting. * * * Receipt of an installment obligation shall be treated as a receipt of property, in an amount equal to the fair market value of the installment obligation, whether or not such obligation is the equivalent of cash. An installment obligation is considered to be property * * *, without regard to whether the obligation is embodied in a note, an executory contract, or any other instrument, or is an oral promise enforceable under local law."

IRC, Section 1363(c)(1) provides in pertinent part:

" * * * any election affecting the computation of items derived from an S corporation *shall be made by the corporation*." (Emphasis added.)

4. See footnote 2, *supra*.

accurately report the corporation's financial results to the IRS for a year in which the former shareholder held stock in the corporation which was subsequently sold before the year's end. The issue, stated alternatively, is whether a Subchapter S corporation and its board of directors owe a former shareholder a continuing fiduciary duty to take such former shareholder's interests (*vis-a-vis* the reporting of his income) into account when electing out of the installment method for computing the corporation's income generated through the sale of assets, such as the Michigan 9 assets, which was consummated after the sale of the shareholder's stock in such corporation and has the effect of distributing said income to all shareholders of that year pursuant to the "per share per day" rule.

A review of case law indicates that the "shareholder termination" rule is not absolute. Termination of the fiduciary relationship does not shield the fiduciary from its duties or obligations concerning transactions which have their inception before the termination of the relationship. *T.A. Pelsue Co. v. Grand Enterprises, Inc.* (D.Colo.1991), 782 F.Supp. 1476, 1485–1486; *Standage v. Planned Invest. Corp.* (Ariz.App.1988), 160 Ariz. 287, 291, 772 P.2d 1140, 1144; and *Microbiological Research Corp. v. Muna* (Utah 1981), 625 P.2d 690. While the foregoing exception is generally applied to directors, officers or employees of a corporation who subsequently compete against the corporation or use information obtained during the fiduciary relation to their advantage, we believe the exception applies with equal force to the facts *sub judice.*

On the face of appellant's complaint, it is clear that the reporting to the IRS of Cellwave's financial results for the year of 1991 is based on transactions which have their inception before the termination of the fiduciary relationship. The transaction in question is the reporting to the IRS of Cellwave's financial results for the year of 1991, a year in which appellant held stock in the corporation. Due to the "pass-through" nature of a Subchapter S corporation for federal income tax purposes, the income generated is distributed to appellant for the year of 1991, pursuant to the "per share per day" rule. The ultimate effect is to generate income and the consequent tax liability to appellant. Appellant's complaint further alleges that defendants' conduct has been intentional and malicious and purposefully done to injure him.

This court is mindful that we have only decided that a fiduciary duty is owed by the defendants to appellant based on the reporting of income from the sale of assets, which is attributed to the year in which appellant was a shareholder. Defendants' decision to elect out of the installment method for computing Cellwave's income and the "pass-through" nature of a Subchapter S corporation (which attributed income to all shareholders on a "per share per day" basis) make such transaction one in which its inception is founded during the time in which the fiduciary relationship between the parties existed. We emphasize that on the

face of appellant's complaint, it cannot be determined whether such duty has been breached. Accordingly, issues concerning the settlement agreement and the business judgment rule are not properly before this court or the trial court on appellees' motion to dismiss.

Based on the foregoing, we conclude the trial court erred in dismissing Count I of appellant's complaint. We add, however, that we find no merit to appellant's argument that the trial court erred in granting appellees' motion to dismiss without opinion and without leave to amend the pleadings. Our decision is based solely on our conclusion that appellant's complaint alleged sufficient facts to state a cause of action for breach of fiduciary duties. Appellant's first assignment of error is, therefore, sustained.

## II

In appellant's second assignment of error, appellant contends the trial court committed reversible error in granting appellees' motion to dismiss on his claim for fraud. Appellant argues that he specifically alleged that the defendants made false statements to him and to the IRS with respect to Cellwave's 1991 financial results with knowledge of their falsity and with the intent and in the expectation that they would be relied upon by appellant and the IRS. The alleged fraudulent misstatements were contained in an IRS Schedule K–1, which appellant was required to take into account in preparing his 1991 federal income tax return and to file with the IRS in reporting his 1991 taxable income.

The Ohio Supreme Court, in *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, set forth the prima facie elements for a cause of action in fraud as follows:

"The elements of fraud are (a) a representation, or where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." (Emphasis added.)

Appellees contend that, from the face of appellant's complaint, appellant cannot set forth a showing of justifiable reliance. This court agrees. From the face of appellant's complaint, it is clear that appellant did not rely upon the fraudulent representations allegedly contained in the IRS Schedule K–1. In fact, appellant alleged in his complaint that he recognized that the statements contained in the IRS Schedule K–1 were false. Moreover, after providing the defendants with extensive authority and analysis to support his position, appellant requested

Cellwave and the individual defendants to correct Cellwave's 1991 federal income tax return and the Schedule K–1 so that he could file his own income tax return without incurring significant unnecessary expense and without the risk of adverse consequences with the IRS.

The finding that no justifiable reliance can be shown on the allegedly false representations contained in the IRS Schedule K–1 is underpinned by Section 6242 of the IRC,[5] which allows the recipient of a Schedule K–1 *not* to rely on the information contained therein and to challenge the alleged misstatements before the IRS. Thus, any claimed reliance on the Schedule K–1, as a matter of law, cannot be considered justifiable. A similar conclusion on justifiable reliance was reached by the Hamilton County Court of Appeals in *Dayton–Walther Corp. v. Kelly* (1987), 42 Ohio App.3d 184, 537 N.E.2d 682. In *Dayton–Walther*, the plaintiff brought suit against a health foundation and two of its doctors who allegedly supplied false information concerning the plaintiff's employees in various workers' compensation claims brought by the employees. In the workers' compensation claims, the plaintiff/employer contested the employees' injuries and thereby the doctors' reports. As a result, the court of appeals held, at paragraph two of its syllabus:

"A claim of negligent misrepresentation on behalf of a self-insured employer does not lie against a physician retained by an employee to prepare a report in support of a workers' compensation claim, when the employer elects to contest the workers' compensation claim and thereby clearly manifests the absence of the essential element of justifiable reliance upon the physician's report."

Likewise, in the present case, appellant recognized that the statements contained in the IRS Schedule K–1 were false. Moreover, appellant requested Cellwave and the individual defendants to correct said statements. Finally, appellant could have challenged said statements pursuant to Section 6242 of the IRC, but apparently chose not to do so. Accordingly, appellant can show no set of facts which would entitle him to relief on his fraud claim.

Therefore, the trial court properly granted appellees' motion to dismiss on appellant's claim of fraud. Appellant's second assignment of error is overruled.

---

5. IRC, Section 6242 provides:
 "A shareholder of an S corporation shall, on such shareholder's return, treat a subchapter S item in a manner which is consistent with the treatment of such item on the corporate return *unless the shareholder notifies the Secretary (at the time and in the manner prescribed by regulations) of the inconsistency.*" (Emphasis added.)
 The IRS has issued a form, Form 8082, which is used to notify the IRS that a taxpayer disagrees with and does not wish to rely on the tax treatment of a so-called pass-through item.

The judgment of the Cuyahoga County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings solely on appellant's claim for breach of fiduciary duties.

*Judgment accordingly.*

MATIA, P.J., and PORTER, J., concur.