WING LEASING, INC., APPELLEE AND CROSS-APPELLANT, *v.* M & B AVIATION, INC. ET AL., APPELLANTS AND CROSS-APPELLEES.

(Nos. 87AP-50 and 87AP-58— Decided March 15, 1988.)

*Dennis J. Fennessey,* for appellee and cross-appellant.

*Crabbe, Brown, Jones, Potts & Schmidt* and *Kenneth E. Harris,* for appellants and cross-appellees.

STRAUSBAUGH, J. This is an appeal by defendants and cross-appeal by plaintiff from a judgment rendered by the court of common pleas in favor of plaintiff. In addition to the jury's verdict in plaintiff's favor for $3,850, the court awarded plaintiff $46,000 in attorney fees and $6,000 in costs. Plaintiff and defendants then moved for a new trial. The court overruled both motions.

Plaintiff, Wing Leasing, Inc., is a Subchapter S corporation formed in 1975. The corporation for all relevant periods was composed of four shareholders, including defendant Charles T. (Tom) Harper, who was also secretary and a director of plaintiff.

Plaintiff developed in 1977 a venture capital flying club, Aero Squadron. Aero Squadron produced revenue for plaintiff primarily by placing privately owned aircraft into a leaseback arrangement such that, for a specified hourly rate, members of the club could rent the aircraft while Aero Squadron performed the requisite maintenance and record keeping. The club ultimately located at the Ohio State University Airport. Record keeping was accomplished via a specialized computer program for which plaintiff was the sole licensee.

Defendant Harper in effect was the general manager of Aero Squadron. He was required as part of his duties to schedule maintenance on the aircraft in the Aero Squadron fleet.

Defendant Harper and defendant Margaret Golledge, along with a third party, created, in November 1981, defendant M & B Aviation, Inc. ("M & B"). M & B is a Subchapter S corporation and is similar in purpose to the function of plaintiff. In fact, M & B purchased an airplane to place in leaseback with plaintiff. Subsequently, defendants Harper and Golledge created M & B Services, Inc., a fictitious entity, for the purpose of facilitating billing by Harper for maintenance work he scheduled or helped to perform.

Aero Squadron was incorporated in March 1982 as a nonprofit corporation to comply with certain Ohio State University Airport rule changes. The four shareholders in plaintiff, including defendant Harper, were named as permanent trustees of the new corporation. Three additional persons, including defendant Golledge, were named as rotating trustees: Two contracts were signed by Aero Squadron with plaintiff. The first was for maintenance and required that those using Aero Squadron planes pay $4 per hour to plaintiff as a service charge. The second was for administrative services and called for monthly payments of $1,500 by Aero Squadron to Wing Leasing. Defendant Harper continued to schedule maintenance on the airplanes.

When plaintiff learned of defendant Harper's activities in M & B, a meeting was held on September 8, 1983, at which time plaintiff demanded an accounting and questioned the propriety of this arrangement. Defendant Harper had, in the meantime, requested a fixed salary and official designation as general manager of Aero Squadron. When plaintiff failed to comply with these requests, defendant Harper resigned as the general manager of Aero Squadron. These issues came to a head in late 1983 and early 1984 when Aero Squadron cancelled its two contracts with plaintiff for maintenance and administrative services. The vote to cancel the contract was four to three, with defendant Harper voting with the majority and the other three partners of plaintiff voting against termination.

Defendant Harper then resigned, in February 1984, as secretary of plaintiff. Later, in May, plaintiff was notified by Aero Squadron that all lease agreements between plaintiff and Aero Squadron were cancelled. Aero Squadron then ordered plaintiff to remove its aircraft from Aero Squadron headquarters.

Plaintiff instituted suit in March 1984, alleging various claims sounding in fraud, breach of fiduciary duty, conversion, conspiracy, tortious interference with plaintiff's business relationships, and misrepresentation. These matters came on for trial in June 1986.

At the close of plaintiff's case, defendants moved to strike all or part of the testimony of several witnesses called by plaintiff. This motion was sustained. Thereafter, defendants moved for a directed verdict. The trial

court sustained the verdict as to defendant Golledge and dismissed her. The court also dismissed certain of plaintiff's claims, except two counts for breach of fiduciary duty against defendants Harper and M & B relative to the conversion of $1,000, one count of breach of fiduciary duty against defendant Harper for misuse of corporate property, and one count of breach of fiduciary duty by defendant Harper for conversion of plaintiff's assets.

After defendants presented evidence on these issues, they renewed their motion for a directed verdict. The court overruled this motion and submitted six issues to the jury. These included the four issues outlined above and two additional counts for breach of fiduciary duty and fraud on the part of defendant Harper relative to misuse of corporate funds. The jury returned a verdict in favor of plaintiff for $850 in compensatory damages and $3,000 in punitive damages. The jury also found that plaintiff was entitled to reasonable attorney fees. This amount was subsequently determined by the trial court to be approximately $46,000. The court also awarded plaintiff $6,000 in costs.

Plaintiff and defendants filed Civ. R. 59 motions for a new trial. The court overruled these motions and plaintiff and defendants appealed. Defendants assign the following as errors for our review:

"I. The court erred in failing to sustain defendants' motion for directed verdict when there was no competent, substantial or probative evidence presented by the plaintiff to support any cause of action.

"II. The court erred in submitting to the jury the issues of a potential award for punitive damages and a potential award of attorney fees.

"III. The court erred in instructing the jury as to the duty of a corporate director by failing to charge in accordance with Revised Code Section 1701.59.

"IV. The court erred, in the case of alleged fraud, misrepresentation and breach of fiduciary duty, by failing to specifically charge that justifiable reliance and injury resulting from that reliance are elements to be proved by the plaintiff.

"V. The court erred, and abused its discretion, in awarding approximately $46,000.00 of fees and $6,000.00 worth of costs and expenses."

Plaintiff, on cross-appeal, makes the following cross-assignments of error:

"I. The trial court committed prejudicial error by striking large portions of plaintiff's evidence, thereafter permitting defense counsel to introduce 'rebuttal' evidence upon the same issues and rejecting plaintiff's motion for a mistrial.

"II. The trial court committed error to the prejudice of plaintiff when it permitted defense counsel to introduce hearsay documents under the guise of cross-examination.

"III. The trial court committed reversible error when it eschewed the mandate of Civil Rule 50(A)(3) to grant a directed verdict.

"IV. The trial court committed reversible error when, substituting its judgment for that of the jury, [it] weighed the evidence and credibility of the witnesses, discounting a substantial body of competent evidence indicative of a course of tortious conduct, to grant directed verdicts upon disputed facts.

"V. The trial court committed prejudicial error when it permitted defense counsel to be offensive and disruptive during the course of the trial, characterizing the conduct to the jury as a duty owed to the client, and thereby prevented a fair trial.

"VI. The trial court committed

prejudicial error in refusing to provide plaintiff 'findings of fact and conclusions of law,' upon timely written request, following a series of directed verdicts upon some, but not all issues within a claim."

Initially, we note that defendants' first assignment of error and plaintiff's third, fourth and sixth cross-assignments of error challenge the propriety of the trial court's rulings on various directed verdict motions. Accordingly, we will address those errors first.

I. Directed Verdicts

Generally, a party seeking a directed verdict is required to state the specific grounds for making the motion. Civ. R. 50(A)(3). Contrary to plaintiff's assertion on cross-appeal, defendants' Civ. R. 50(A) motion stated with specificity the precise bases for the motion. Specifically, defendants' motion, which comprised over twenty pages of transcript, alleged plaintiff's failure to establish essential elements of its claims or that plaintiff suffered no damages as a result of defendants' conduct.

The test to be employed by the trial court in ruling on a motion for a directed verdict is set forth in Civ. R. 50(A)(4), which provides:

"When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

In ruling on a motion pursuant to the Civ. R. 50(A)(4) standard, a question of law being the only issue, the court is required to construe the evidence before it most strongly in favor of the party against whom the motion is made. The test looks to the sufficiency of the evidence on each essential element of the plaintiff's claims. *Ruta v. Breckenridge-Remy Co.* (1982), 69 Ohio St. 2d 66, 23 O.O. 3d 115, 430 N.E. 2d 935. Where the party opposing the motion is reasonably able to make out from the evidence all essential elements of his claim, a directed verdict is inappropriate. *O'Day v. Webb* (1972), 29 Ohio St. 2d 215, 58 O.O. 2d 424, 280 N.E. 2d 896.

\* \* \*[1]

It is well-established that a corporate officer occupies a position of trust in relation to his corporation. *Thomas v. Matthews* (1916), 94 Ohio St. 32, 43, 113 N.E. 669, 671. Such relationship imposes upon directors duties in the nature of a fiduciary obligation. *Id.*; see, also, *Radol v. Thomas* (C.A. 6, 1985), 772 F. 2d 244, certiorari denied (1986), 477 U.S. 903. The principles which govern the fiduciary relationship between a corporation and its directors include a duty of good faith, a duty of loyalty, a duty to refrain from self-dealing and a duty of disclosure. R.C. 1701.59(B) and 1701. 60(A)(1); see, also, *Apicella v. PAF Corp.* (1984), 17 Ohio App. 3d 245, 247, 17 OBR 512, 515, 479 N.E. 2d 315, 318 (duty of good faith); *Radol, supra,* at 256 (duty of loyalty); *Bohannon v. Taylor* (1936), 52 Ohio App. 564, 570-573, 6 O.O. 482, 484-485, 4 N.E. 2d 164, 166-167 (prohibition against self-dealing); *Nienaber v. Katz* (1942), 69 Ohio App. 153, 158-161, 23 O.O. 578, 580-581, 43 N.E. 2d 322, 325-326, and *Kellogg-Mackay Co. v. O'Neal* (1931), 39 Ohio App. 372, 387, 177 N.E. 778, 783 (duty of disclosure).

Directors of close corporations, like their general corporation countertiff's flying club. Defendants maintain

---

[1] The text of the opinion as it appears herein was abridged by Judge Strausbaugh.

parts, also occupy a relationship of loyalty and good faith to the corporate body, unless the close corporation agreement provides otherwise. See R.C. 1701.59 and 1701.591(D). However, because close corporation directors are frequently the corporate stockholders as well, courts also tend to impose a stringent fiduciary standard on such directors. See, generally, 1 O'Neal & Thompson, O'Neal's Close Corp. (3 Ed. Cum. Supp. 1987) 31-32, Section 1.20 (collecting cases).

Here, plaintiff is a close corporation of which defendant Harper was a shareholder and, for the period prior to March 1982, also a director and officer. As such, defendant Harper owed plaintiff those fiduciary duties consistent with his responsibilities for the management of the flying club, Aero Squadron. Specifically, plaintiff alleged that defendant Harper breached his duties of good faith, of disclosure, of loyalty and to refrain from self-dealing. The basis for these allegations was that Harper created defendant M & B as a competing business; that he removed $1,000 from plaintiff's checking account to facilitate the purchase by defendant M & B of an airplane; that Harper returned this money to plaintiff as payment of an entry fee by defendant M & B for placing the airplane in leaseback with the flying club Aero Squadron; that defendant Harper allowed defendant M & B to place its airplane in leaseback with Aero Squadron without paying the $1,000 entry fee; and, that defendant Harper damaged plaintiff by converting certain property to his own use or for his personal benefit.

Defendants, in their first assignment of error, contend that the trial court erred when it failed to direct the verdict in their favor on these issues. As noted above, a directed verdict is appropriate only where a party has failed to adduce any evidence regarding an essential element of his claim.

As to plaintiff's claim that Harper breached his fiduciary duties to plaintiff relative to the withdrawal and return of the $1,000, we find sufficient evidence in the record to support this claim. Clearly, plaintiff's record of corporate minutes reflects that plaintiff had adopted a policy which required all officers to unanimously approve any expenditure of more than $500. Plaintiff's testimony indicates that such policy was in effect at the time defendant Harper authorized the $1,000 check "to the order of Southwestern [sic] Ohio Air Service, Inc." Although evidence was adduced that the money was given to Southeastern Ohio Air ("SEO") as a deposit to hold the airplane until plaintiff's officers could decide whether to purchase it, the officers indicated that they were never aware of the transaction. As such, we find that plaintiff's evidence established a prima facie breach of defendant Harper's duty to disclose and a corresponding injury to plaintiff. Accordingly, the common pleas court properly refused to direct the verdict on this issue at the close of plaintiff's case.[2]

Defendants also contend that plaintiff failed to establish a breach of defendant Harper's fiduciary duties with respect to his failure to collect the $1,000 entry fee from M & B for plain-

---

[2] Even assuming for purposes of this appeal that plaintiff's evidence also provided an explanation for the expenditure, thus negating the invalidity of the transaction, such consideration is of no moment for purposes of Civ. R. 50(A) motions. The only issue before the trial court was the legal sufficiency — and not the truth — of plaintiff's evidence. As we have noted, that evidence was sufficient to allow the issue to go to the jury.

that because plaintiff did not adduce evidence of any damage, there could be no liability. We fail to comprehend defendants' argument in this regard.

Clearly, the mere fact that plaintiff did not receive this fee is sufficient to constitute the injury. Thus, the fee may be recovered as an item of damages. The only issue, then, is whether defendant Harper in fact failed to collect the fee and, therefore, breached a duty owed to plaintiff.

Here, plaintiff's evidence established that defendant Harper was a director of both plaintiff and M & B; that M & B sought to have its airplane placed in a leaseback arrangement with plaintiff's flying club; that plaintiff had a policy of collecting $1,000 as an entry fee for all aircraft placed in leaseback with the flying club; and, that defendant Harper caused a notation to be entered on plaintiff's records that M & B had paid the fee, when in fact the fee had not been collected. Simply stated, plaintiff's evidence on this issue was sufficient to withstand a motion for a directed verdict. Therefore, the trial court properly refused to direct this issue in defendants' favor.

\* \* \*

### IV. Attorney Fees

Defendants in their second and fifth assignments of error challenge the trial court's award of attorney fees and costs. The trial court, with the agreement of counsel, submitted the question of whether attorney fees were recoverable to the jury. The jury determined that attorney fees should be recovered, and a hearing was held to the court to determine the amount of reasonable fees. Plaintiff's counsel submitted a summary of the work he had performed throughout the case. The total dollar amount of attorney fees claimed was $45,795. Also submitted was a list of expenses incurred

in the litigation, the total amount claimed being $11,942.64. The trial court awarded the full amount of attorney fees, but awarded only $6,000 in costs.

Defendants contend that the award of attorney fees was erroneous on two grounds. They argue first that the evidence did not support an award of attorney fees, and second, that the award of fees was unreasonable in amount. Pursuant to this court's determination *supra* that the evidence was not sufficient to support a finding of actual malice, defendants' first contention is to a certain extent correct. In the absence of actual malice, attorney fees, like punitive damages, are not recoverable as a part of damages. *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178, 183, 71 O.O. 2d 174, 176-177, 327 N.E. 2d 654, 658. Defendant Harper's breaches of his fiduciary duties were not sufficiently egregious to warrant a recovery of attorney fees.

Nonetheless, part of the trial court's award of attorney fees may have been justified. Apart from recovery of attorney fees for torts involving actual malice, attorney fees may also be recovered if the losing party has conducted the case in bad faith or in a vexatious manner. See *Sorin* v. *Bd. of Edn.* (1976), 46 Ohio St. 2d 177, 75 O.O. 2d 224, 347 N.E. 2d 527. The trial court did not make any general finding that the defense had conducted the case in bad faith, and it is apparent there were good reasons to contest this litigation. The trial court did, however, determine that sanctions were appropriate for specific instances of discovery violations. Attorney fee awards in the case of discovery violations are governed by Civ. R. 37. That rule allows recovery of attorney fees and expenses incurred in obtaining a court order to compel discovery, Civ. R. 37(A)(2), and also the recovery of such fees and expenses caused by a violation

of court-ordered discovery. Civ. R. 37(B)(2)(e). See, also, Civ. R. 37(C) and (D). As is apparent, that rule does not justify an award of attorney fees incurred throughout the whole litigation, only the portion related to the discovery matters. Since the trial court did not specify the attorney fees it found justified under Civ. R. 37, it is appropriate to remand this question to the trial court for further resolution.

The defendants' remaining contention concerning attorney fees is that the award of $46,000 was unreasonable in light of the limited award of $3,850 in compensatory and punitive damages. The trial court held the view that the result achieved in the litigation was but one of many factors to consider in determining the amount of reasonable fees. This view, however, gives too little weight to plaintiff's limited success on the merits in the determination of reasonable attorney fees.

While a number of factors should be taken into account in determining the amount of reasonable fees, one of the main factors is the result achieved at trial. "The relation of the fee allowed to the amount recovered has an important bearing on the reasonableness of the fee." 20 American Jurisprudence 2d (1965) 63-64, Costs, Section 78. Apart from the amount recovered, the number of claims successfully litigated in relation to the total number of claims asserted, and the relation between the successful and unsuccessful claims, should also have an important bearing on the reasonableness of the fees. See Hensley v. Eckerhart (1983), 461 U.S. 424.

The trial court abused its discretion in weighing the foregoing considerations. The plaintiff's success in this case was, at best, severely limited. The amount recovered, $3,850, was paltry. The term "reasonable" can in no way be read to include the expense of $46,000 in attorney fees for recovery of such a minute sum. Further, a number of plaintiff's claims did not even reach the jury, since the court directed the verdict thereon. It is unreasonable for a plaintiff to recover fees which were expended in pursuit of a substantial number of claims which were defeated by the defendant. See Hensley, supra, at 434-436. When plaintiff's successful and unsuccessful claims share a common factual and legal setting, as in this case, it may be difficult for a court to determine precisely what amount of fees should not be allowed because of the unsuccessful claims. Nonetheless, some effort must be made to limit plaintiff's recovery of fees so that a defendant is not forced to totally finance plaintiff's efforts which are only partially successful. A plaintiff need not succeed on every claim or theory to recover a full fee; nor need a plaintiff necessarily be denied a full fee when it exceeds the amount recovered. This case, however, presents circumstances wherein a number of claims were disallowed and the attorney fee award vastly exceeded the amount recovered. The attorney fee award was unreasonable in amount and therefore in error. The error is not prejudicial, however, pursuant to this court's determination that attorney fees were not recoverable, except to the limited extent allowed under Civ. R. 37.

Defendants in their fifth assignment of error also challenge the award of costs of $6,000. Defendants' argument on the costs issue is sparse, if not practically nonexistent. Their reasoning appears to be that they should not be charged with the expense of the presentation of a number of witnesses whose testimony was ultimately stricken as being irrelevant or redundant. There is also a vague intimation that the trial court abused its discretion in awarding costs to the plain-

tiff when it was "inequitable to assess [costs] against the non-prevailing party." Unfortunately, defendants cite no specific items in the summary presented by plaintiff's attorney which should have been excluded from the award pursuant to the foregoing arguments. The trial court, in awarding only $6,000 of the $11,942 claimed by the plaintiff, likewise was not specific as to which items were allowed or disallowed; yet, defendants make no argument that the trial court's findings of fact and conclusions of law were deficient in that respect.

This court concludes that the defendants' brief has failed to raise a sufficient challenge to the award of costs. An appellate court may disregard "[e]rrors not specifically pointed out in the record and separately argued by brief * * *." App. R. 12(A). Defendants' assignment of error on costs is supported by little argument. Though the plaintiff's documentary evidence on costs exceeded ten pages and was quite detailed, no specific argument is made as to any of the items claimed by plaintiff.[3] See App. R. 16(A)(4). Defendants vaguely contend the award of costs was "inequitable," but it is unclear to which of the unspecified items this argument pertains. Defendants' brief is plainly inadequate to raise the issue of costs, and it is therefore not properly before this court. Cf. *Foster* v. *Bd. of Elections* (1977), 53 Ohio App. 2d 213, 228, 7 O.O. 3d 282, 290, 373 N.E. 2d 1274, 1284.

Pursuant to the foregoing, defendants' second assignment of error is sustained as to the attorney fees issue, and defendants' fifth assignment of error is overruled.

V. Conclusion

Based on the foregoing, defendants' first, third, fourth and fifth assignments of error are overruled, while the second assignment of error is sustained in part as to the award of attorney fees premised upon a showing of actual malice. The second assignment of error is overruled to the extent that a portion of the award was granted pursuant to Civ. R. 37. Plaintiff's first, second, third, fifth and sixth cross-assignments of error are overruled, while the fourth cross-assignment of error is sustained in part and overruled in part. The fourth cross-assignment of error is sustained as it pertains to the issues of conversion of the engine preheater and $550 in missing parts, and as to the dismissal of defendant Golledge for conspiracy. The judgment of the court of common pleas is, therefore, affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

REILLY and BRYANT, JJ., concur.

---

[3] Defendants do mention that certain lunches listed by plaintiff should not have been allowed as a litigation expense. However, it is doubtful that the trial court was awarding these obviously personal expenses given its limited award of costs.