**Robert E. RUBIN, Plaintiff,**

v.

**SCHOTTENSTEIN, ZOX & DUNN, et al., Defendants.**

No. C–2–93–325.

United States District Court, S.D. Ohio, Eastern Division.

Oct. 27, 2000.

John Hayes Rion, John H Rion and Associates, Dayton, OH, Bernard Duncan Mazer, Bernard D. Mazer & Associates, Dublin, OH, Robert S Wolf, Gersten Savage & Kaplowitz, New York, NY, for plaintiff.

Robert Ward Trafford, Porter Wright Morris & Arthur, Columbus, OH, Joseph William Ryan, Jr., Porter Wright Morris & Arthur, Columbus, OH, for defendants.

### OPINION AND ORDER

GEORGE C. SMITH, District Judge.

Plaintiff asserts securities fraud and common law fraud in connection with a loan he extended to a company that developed the "TENS" unit biotherapy system. Defendant moves for summary judgment (Doc. 102). For the reasons that follow the Court grants defendants' motion.

### I.

The remaining plaintiff, Robert M. Rubin, is, in his own words, a sophisticated investor. Defendant Richard Barnhart is an attorney who practices law in Columbus, Ohio, and is a partner in the law firm Schottenstein, Zox & Dunn ("SZ & D"), which is also a defendant in this action. Barnhart represented a closely-held corporation named Medical Designs, Inc. ("MDI"), in which plaintiff Rubin invested, and to which he also loaned money, with the plan of taking MDI public. MDI was formed in 1988 to develop and market a pain control device using transcutaneous electrical nerve stimulation (commonly known as the "TENS" unit).

On November 15, 1988, MDI secured a revolving line of credit with Star Bank. Danny Todd, then president of MDI, executed both a financing agreement and a security agreement in connection with the line of credit. Defendant Barnhart notarized these documents and signed them as a witness. Barnhart served as MDI's legal counsel from that time forward.

MDI initially experienced significant growth and, at one point, employed thirty sales representatives. MDI's gross revenues for the fiscal year ending May 31, 1990 were over $11 million. However, in July 1991 the *New England Journal of Medicine* published an article questioning the ability of the TENS unit to relieve pain. Publication of this article adversely affected MDI which then experienced significant decreases in gross revenues, creating a serious cash flow problem. This cash flow problem in turn led MDI to seek financing from plaintiff Rubin and Patricia Cohen beyond the amounts agreed to by MDI and Star Bank.

Brothers Danny Todd and Gregory Todd were both officers and shareholders of MDI. Plaintiff alleges that the Todds urged him to invest about $150,000 in MDI through the combination of a purchase of MDI stock and a loan to MDI. The Todds were initially defendants in this lawsuit. Danny Todd filed for bankruptcy after this

action was filed (Doc. 22). Although the record does not indicate why, plaintiff has not pursued his claims against Gregory Todd.

With respect to defendants Barnhart and SZ & D, plaintiff Rubin and his attorney, Stephen Weiss, aver that during conversations with them, Barnhart represented *inter alia* that MDI did not have any problems with Star Bank. Plaintiff also asserts that Barnhart failed to disclose to him that plaintiff's loan to MDI, as well as his investment in MDI, were both default events in Star Bank's loan agreement with MDI.[1]

The proposed transaction closed on March 27, 1992. On March 30, 1992, plaintiff wired $150,000 to MDI's account at Star Bank. Plaintiff advanced $75,000, or one-half of the investment, and Patricia Cohen advanced the other half of the investment. In addition, Plaintiff and Ms. Cohen each purchased one-half of 166.5 shares of MDI stock, representing 25% of MDI's outstanding shares, for the sum of $3,300. Therefore, Plaintiff provided the resources for one-half of the loan ($75,000) plus one half of the stock purchase ($1,665), for a total investment of $76,665.

Shortly after plaintiff made this investment, Star Bank froze the MDI account. On April 6, 1992, after being fully informed about MDI's relationship with Star Bank, plaintiff entered into a Letter Agreement with Star Bank and decided to go forward with taking MDI public. Under the Letter Agreement, the MDI assets were "unfrozen" on the condition that MDI fulfill its obligations to Star Bank.

The Todds, however, failed to make deposits into the Star Bank account as required under the Letter Agreement. On May 5, 1992, Star Bank sought and obtained a temporary restraining order in state court which prohibited MDI from making "any transfers or expenditures whatsoever, except to Star Bank, of any funds derived from its account receivables which it ... withheld from depositing into Star Banks Blocked Account...." *Star Bank, N.A. v. MDI*, Case No. A9204163 (Hamilton County Common Pleas). The TRO was issued and Star Bank stopped advancing MDI funds based upon MDI's new breach of the April 6, 1992 Letter Agreement.

On May 5, 1992, MDI filed a voluntary petition for relief under the Bankruptcy Code. *In re Medical Designs Inc.*, Case No. 2–92–03522 (S.D. Ohio Bankruptcy Court). Defendants Barnhart and SZ & D were not involved in Star Bank's application for the TRO, or MDI's filing for bankruptcy.

Even after MDI declared bankruptcy, plaintiff attempted to take MDI public. Plaintiff Rubin negotiated with Sparta Surgical Corporation ("Sparta") to effectuate an Asset Purchase Agreement between MDI and Sparta. Plaintiff maintains that Star Bank usurped the Sparta opportunity from MDI.

Plaintiff has brought other lawsuits in an attempt to recover his investment in MDI. In each of these cases, plaintiff has asserted that his injury was the result of misconduct of others who failed to live up to contracts after the April 6, 1992 Letter Agreement. On May 29, 1996, plaintiff filed a complaint claiming injuries resulting from Star Bank's alleged breach of the April 6, 1992 Letter Agreement. *Rubin v. Star Bank, N.A.*, Case No. C2–96–541 (S.D.Ohio). Also, on October 18, 1996, the plaintiff filed a claim for injuries resulting from Star Bank's alleged interference with an asset purchase agreement Sparta entered into with MDI. *Rubin and Cohen v. Star Bank N.A.*, Case No. C1–96–1013 (S.D.Ohio). The two cases were settled in January 1998 and plaintiff received compensation exceeding his $76,655 investment.[2]

---

1. As defendants point out, there is no evidence that Star Bank took any adverse action based upon these defaults.

2. The exact amount of the settlements in these cases are confidential and filed under seal pursuant to an agreed protective order.

## II.

The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgement is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex*, and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). The Court in *Street* identified a number of important principles applicable in new era summary judgement practice. For example, complex cases and cases involving state of mind issues are necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

## III.

Plaintiff brings claims of securities fraud in violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b–5 promulgated thereunder by the Securities Exchange Commission, 17 C.F.R. § 240.10b–5. To prevail, the plaintiff must establish the following elements: (1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) justifiably relied on by plaintiff, and (5) proximately causing injury. *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1409 (6th Cir.1991); 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5. The elements of a claim for actual fraud under Ohio law are similar to a Rule 10b–5 claim. *Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263, 270 (6th Cir.1998). To prevail on claim for common law fraud in Ohio, a plaintiff must show (1) a misrepresentation; (2) of a material fact; (3) made with knowledge of its falsity, or reckless disregard for its truth or falsity; (4) upon which the plaintiff justifiably relied; and (5) a resulting injury proximately caused by the reliance. *DiPietro v. DiPie-*

*tro,* 10 Ohio App.3d 44, 46, 460 N.E.2d 657 (1983).

Defendants argue that, based upon undisputed facts and plaintiff's own allegations and testimony, plaintiff cannot establish the "loss causation" element required under both the federal securities law and the Ohio common law definition of actual fraud. To establish "loss causation," plaintiff must demonstrate that (1) he would not have invested in MDI were it not for the alleged omissions and misstatements of Barnhart, and (2) the alleged omissions and misstatements were the proximate cause of his losses. *See Fryling v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 593 F.2d 736, 743–44 (6th Cir.1979). The Court finds that the plaintiff cannot establish "loss causation" based upon the undisputed facts.

Plaintiff's investment losses stemmed from actions of the Todds and Star Bank that occurred after the issuance of the April 6, 1992 Letter Agreement. Mr. Barnhart's alleged failure to disclose the financial status of the MDI/Star Bank relationship and MDI's financial condition before April 6, 1992 may well have induced the investment, but these omissions and misstatements were remote and unrelated to the ultimate decline in the investment's value. Furthermore, as defendant's note, it is undisputed that Star Bank did not take any adverse action based on the purported breaches of the financing agreement caused by the plaintiff's loan and investment, about which Barnhart allegedly failed to inform the plaintiff.

Plaintiff's effort to take MDI public collapsed after the execution of the April 6, 1992 Letter Agreement, and after Star Bank had unfrozen the $150,000. Plaintiff's losses resulted from Star Bank's actions after it determined that Gregory Todd, Danny Todd, had caused MDI to fail to live up to its obligations under the Letter Agreement. When Star Bank determined that MDI failed to deposit remittance and other collections it had received, Star Bank obtained a TRO prohibiting MDI from making "any transfers or expenditures whatsoever, except to Star Bank, of any funds derived from its account receivables ...." Immediately after the TRO was issued, MDI filed for bankruptcy. The TRO and subsequent MDI bankruptcy were the result of the actions taken by MDI and Star Bank, and were completely unrelated to Mr. Barnhart's alleged omissions and misrepresentations.

Further, plaintiff concedes that he could have brought MDI public until Star Bank usurped the Sparta asset purchase opportunity in October 1992. Star Bank's decision to "usurp" the Sparta opportunity was entirely unrelated to Mr. Barnhart's alleged conduct. In light of these undisputed facts, as a matter of law, Barnhart's alleged misstatements and failure to disclose are too remote from plaintiff's loss to establish loss causation.

## IV.

Defendants also argue that plaintiff is not entitled to relief because he has already recovered more than his out-of-pocket damages in settlement of related litigation, and the facts do not support an award of punitive damages or attorney fees as a matter of law.

The out-of-pocket measure is the favored method for computing damages in a securities fraud case. *Stone v. Kirk,* 8 F.3d 1079, 1092 (6th Cir.1993). In determining out of pocket damages, the Court calculates "the excess of what he paid over the value of what he got." *Levine v. Seilon, Inc.,* 439 F.2d 328, 334 (2d Cir.1971). Similarly, under Ohio law, "[t]he measure of damages for fraud inducing the purchase of securities is ... the difference between the property as it was represented to be and its actual value at the time of purchase." *Citizens Banking & Savings Co. v. Spitzer, Rorick & Co.,* 65 Ohio App. 309, 29 N.E.2d 892, syllabus ¶ 4 (Franklin 1938).

Under either measure of damages, the most plaintiff Rubin can recover, assuming he received nothing of value, is the

$76,665.00 he invested on March 27, 1992. Mr. Rubin already recovered more than this in settlement of Case Nos. C2–96–541 and C–1–96–1013. Thus, plaintiff is barred from seeking further compensatory relief.

 Furthermore, punitive damages and attorney fees are not available in actions brought under Rule 10b–5. *Imperial Supply Co. v. Northern Ohio Bank,* 430 F.Supp. 339, 342 n. 3 (N.D.Ohio 1976) (punitive damages not available in Rule 10b–5 actions); *Stone v. Kirk,* 8 F.3d 1079, 1093 (6th Cir.1993) (punitive damages are not authorized in private action brought under Rule 10b–5); *Van Alen v. Dominick & Dominick, Inc.,* 560 F.2d 547, 553 (2d Cir. 1977) (attorney fees not available in Rule 10b–5 actions). Under Ohio law, punitive damages may not be awarded in cases of fraud unless the plaintiff establishes the elements of the fraud and shows that "the fraud is aggravated by the existence of malice or ill-will". *Logsdon v. Graham Ford Co.,* 54 Ohio St.2d 336, 340 n. 2, 376 N.E.2d 1333 (1978). Also, under Ohio law, an award of attorney fees is a punitive remedy requiring a jury finding of malice, *Digital Analog Design Corp. v. North Supply Co.,* 63 Ohio St.3d 657, 662, 590 N.E.2d 737 (1992), or a determination that the defendants acted in bad faith. *Wing Leasing, Inc. v. M & B Aviation, Inc.,* 44 Ohio App.3d 178, 183, 542 N.E.2d 671 (1988).

Even when the facts are viewed in the light most favorable to plaintiff, there is nothing in the record from which ill-will, malice, or bad faith on the part of the defendants can reasonably be inferred. Hence, as a matter of law, plaintiff is not entitled to punitive damages or attorney fees.

In sum, defendants are entitled to summary judgment in their favor because plaintiff has already recovered more than his total investment in MDI through other lawsuits, and because he is not entitled to attorney fees or punitive damages as a matter of law.

## V.

For the above reasons, the Court **GRANTS** defendants' motion for summary judgment (Doc. 102).

The Clerk shall enter a final judgment in this case in favor of defendants, and against plaintiff, dismissing this action with prejudice.

The Clerk shall remove this case from the Court's pending cases and motions lists.

**IT IS SO ORDERED.**