DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, which granted appellee's motion for partial summary judgment on all but two of appellant's seven claims for relief. For the following reasons, we affirm the judgment of the trial court.
 {¶ 2} Appellant, JG Industries, Inc., is an Ohio Corporation engaged primarily in the business of the purchasing and selling used metal working machinery and industrial plants. John F. Yoder and his wife, Geraldine Yoder, are the sole shareholders in the corporation. In 1997, John Yoder turned the day-to-day operations of the business over to his son, John Scott Yoder, who, during the relevant period was titled as the President of JG Industries.
 {¶ 3} In September 1997, John Scott Yoder hired appellee, Norman A. Abood, an attorney, to work for JG Industries as its in-house counsel and Chief Operating Officer. Appellee received a salary, as well as bonuses for bringing new business to the corporation. Over the next year, John Scott Yoder and appellee engaged in a number of business transactions; all were allegedly on behalf of JG Industries.
 {¶ 4} One of these transactions, a contract with Newport News Drydock and Shipbuilding Company ("Newport News") for the purchase and re-sale of commercial ship building parts ("ship sets"), resulted in a judgment of over $6 million against JG Industries. In addition, appellant forfeited a $1.2 million deposit provided to Newport News on October 27, 1998, the day the contract was executed.
 {¶ 5} There were several other business dealings engaged in by John Scott Yoder and appellee during their tenures as officers of JG Industries. According to John F. Yoder, these transactions occurred without his knowledge or sanction. John F. Yoder terminated appellee's employment as Chief Operating Officer of JG Industries in September 1999, and as in-house counsel in December 1999.
 {¶ 6} On September 15, 2000, appellant filed a complaint against appellee and, then, an amended complaint. In the first count of its amended complaint, appellant asserted that appellee breached his fiduciary duty and committed legal malpractice when he approved the $6.2 million contract between JG Industries and Newport News Drydock and Shipbuilding Company. Appellant maintained that it lost the $1.2 million deposit as the result of the transaction.
 {¶ 7} In its second cause of action, appellant asserted that appellee breached his fiduciary duty when he caused JG Industries to invest $30,000 in Euro Industries. The third count of the complaint alleged that appellee, as well as John Scott Yoder, facilitated a loan to RJ Rigging, Inc. and Richard and Judie Albrecht from JG Industries' line of credit at National City Bank, with JG Industries as the corporate guarantor. According to the complaint, appellee received $250,000 in shares in RJ Rigging, Inc. in consideration of the loan. Appellant claimed that this transaction was ultra vires and violated R.C. Chapter 1701, Ohio Corporation Law. Appellant therefore maintained that appellee breached his fiduciary duty with regard to this business transaction.
 {¶ 8} The fourth count of the amended complaint set forth a claim similar to that asserted in the third count, but involved a different business entity named Induco Services. Appellant again alleged that appellee breached his fiduciary duty. The fifth cause of action raised a criminal claim of theft, in violation of R.C. 2913.02(A)(2).
 {¶ 9} The sixth count was based on alleged violations of the Code of Professional Responsibility. Finally, the seventh cause of action was predicated on the fact that appellee's acts in the named transactions were intentional, thereby entitling appellant to punitive damages.
 {¶ 10} Appellee answered the complaint and subsequently filed a motion for summary judgment on all of appellant's causes of action. Appellant filed a combined motion for summary judgment and response to appellee's motion for summary judgment. After realizing that trial was already scheduled in this matter, appellant subsequently filed a motion for leave to file its motion for summary judgment. The trial judge denied the motion for leave and ordered that appellant's motion for summary judgment be stricken.
 {¶ 11} In the judgment appealed to this court, the trial judge granted partial summary judgment to appellant, finding that no question of fact existed on appellant's (1) cause of action based upon the transaction between JG' Industries and Newport News; (2) cause of action involving Induco Services; (3) count of the amended complaint alleging criminal theft; (4) cause of action founded upon purported violations of the Code of Professional Responsibility; and (5) count alleging intentional conduct and punitive damages. As to this last count, the trial court found that "[n]o evidence has been presented which rises to an inference of intentional misconduct."
 {¶ 12} Despite appellant's request to the contrary, the judge declined to add the Civ.R. 54(B) language that would render her judgment a final, appealable order. Consequently, appellant voluntarily dismissed, without prejudice, its causes of action arising from appellee's business dealings with RJ Rigging, Inc. and Euro Industries.
 {¶ 13} In this ensuing appeal, appellant asserts the following assignments of error:
 {¶ 14} "1. The trial court erred in granting the defendant's motion for summary judgment as it relates to the intentional acts of the defendant in that there was sufficient evidence before the court that the defendant acted intentionally and in bad faith in breaching his fiduciary duty to the appellant."
 {¶ 15} "2. The trial court erred in granting defendant's motion for summary judgment as it relates to the Newport News case in that the final decision to enter into the contract that cost appellant $1.2 million was the defendant's decision."
 {¶ 16} We shall first address the merits of appellant's second assignment of error.
 {¶ 17} In support of this assignment of error, appellant relies, in part, on excerpts of the deposition and trial testimony[1] of John Scott Yoder appended to its appellate brief as Exhibits 2 and 3. These excerpts were originally attached to appellant's combined motion for summary judgment and response to appellee's motion for summary judgement. Because the trial court struck the motion for summary judgment, appellee filed a motion in this court to strike, inter alia, Exhibits 2 and 3, arguing that they were not before the trial court in its determination of appellee's motion for summary judgment. We agreed, and ordered Exhibits 2 and 3 stricken from the record of this case. JGIndustries, Inc. v. Abood (July 30, 2002), 6th Dist. No. L-02-1062. Appellant filed a motion for reconsideration of this decision; said motion is pending before this court.
 {¶ 18} Appellant maintains that the trial court struck only its motion for summary judgment. Therefore, and because the response to appellee's motion for summary judgment remained, the exhibits presented in support of the combined motion/response were considered by the court. We agree. Therefore, appellant's motion for reconsideration is found well-taken. Our decision of July 30, 2002 is vacated, and we shall consider the disputed excerpts in our decision.[2]
 {¶ 19} It is appropriate for a trial court to grant summary judgment pursuant to Civ.R. 56(C) when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, paragraph three of the syllabus.
 {¶ 20} A party seeking summary judgment bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. If the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden to "set forth specific facts showing the existence of a genuine triable issue." State ex rel. Burnes v. Athens Cty. Clerk ofCourts (1998), 83 Ohio St.3d 523, 524. An appellate court reviews a trial court's decision to grant summary judgment de novo.
 {¶ 21} Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
 {¶ 22} In determining that appellee was entitled to summary judgment on the first count of the complaint, the trial court found that the $6.2 million contract was signed by John Scott Yoder, as President of JG Industries, and the representative of Newport News before seeking appellee's "approval" and that the contract contained a merger clause. The court therefore held, in essence, that neither a claim of breach of fiduciary duty nor legal malpractice could be grounded on appellee's after-the-fact review of the signed contract.
 {¶ 23} Appellant apparently claims that the trial judge misconstrued the facts because she stated that John Scott Yoder gave appellee a "signed copy" of the contract for his review, but the undisputed facts demonstrate that appellee was provided with "fully executed originals" of the contract. According to appellant, this signifies "that the contract was contingent upon Appellee's approval."
 {¶ 24} Appellant also urges that the deposition testimony of John Scott Yoder indicating that he, at one point on October 27, 1998, "refused to sign the contract until it had been approved by Appellee," and that Yoder refused to leave the original contracts with Newport News without appellee's "blessing" reveal that they could back out of the deal at any time and demand the return of their deposit. Appellant also claims that this, as well as other facts elicited in appellee's deposition, shows that both Newport News and John Scott Yoder understood that the contract was contingent on appellee's approval. Finally, appellant maintains that because appellee admitted in his deposition testimony that, pursuant to business tactics developed by John Yoder, he delayed in remitting the remainder of the contract price while looking for a purchaser for the ship sets is evidence proving that appellee's actions were "intentional and in bad faith." We conclude, however, that none of these alleged facts are sufficient to create a genuine issue for trial.
 {¶ 25} The elements of a legal malpractice claim are "(1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." Vahila v. Hall (1997), 77 Ohio St.3d 421, 427. Failure to prove any one of these three elements entitles a defendant to summary judgment on a legal malpractice claim. Sprague v. Simon (2001),144 Ohio App.3d 437, 441.
 {¶ 26} The undisputed facts of this cause demonstrate that with regard to the Newport News contract, appellant failed to offer specific operable facts creating a genuine issue of material fact as to whether appellee breached any duty to appellant and on the question of a causal connection between the alleged breach and appellant's damages.
 {¶ 27} Even though appellee participated in the preliminary negotiations between appellant and Newport News, he did not accompany John Scott Yoder to his meeting with Newport News on October 27, 1998. On that date, John Scott Yoder, without the advice of appellee, entered into the contract, titled "Asset Purchase and Sale and License Agreement," with Newport News for the purchase of the ship sets. There is no dispute that this contract was "fully executed" on that date. Indeed, John Scott Yoder admitted in his deposition and trial testimony that he signed the contract on behalf of JG Industries. Moreover, the deposit of $1.2 million was also provided to Newport News on this same date. Appellant failed to offer any evidence that appellee was involved in the execution of the contract or in approving the deposit.
 {¶ 28} Furthermore, the contract contains a merger clause stating that "this Agreement constitutes the entire agreement between the parties pertaining to the subject matter herein * * *." The merger clause prohibits supplementation, modification or amendment of the agreement unless it is "set forth in a writing executed by all of the parties * * * specifically referencing this Agreement and expressly stating the parties' intent that it be so supplemented, modified, or amended * * *."
 {¶ 29} Thus, based on these undisputed facts, the contract between JG Industries and Newport News could not be subject to appellee's after-the-fact approval, and appellee did not breach any duty to his client. Further, any damages suffered by appellant flowed from its act of entering into the contract and providing Newport News with a $1.2 million deposit on October 27, 1998. Those "facts" cited by appellant as creating a triable issue as to whether appellee held the power of final approval over the contract do not even give rise to an inference that appellant had the obligation to do so, that he breached this obligation or that there was a causal connection between the purported breach and appellant's damages.
 {¶ 30} As to the claim of breach of fiduciary duty, appellant asserts that the breach occurred when appellee failed to insist upon a contingency clause in the contract, returned the executed contract to Newport News, and approved the contract without having a buyer for the ship sets.
 {¶ 31} Corporate officers have a fiduciary duty to the corporation. Genesis Respiratory Services, Inc. v. Hall (1994),99 Ohio App.3d 23, 28, quoting Wing Leasing, Inc. v. M B Aviation,Inc. (1988), 44 Ohio App.3d 178, 181. A fiduciary relationship is one in which "`special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.'" Stone v. Davis
(1981), 66 Ohio St.2d 74.
 {¶ 32} Again, however, appellant failed to offer any facts to create a genuine issue of material fact on the question of whether appellant breached his fiduciary duty. To repeat, the facts show that John Scott Yoder signed an undisputedly valid and binding contract with Newport News without any advice from appellee. Therefore, appellee's approval (or disapproval) of the terms of that contract could have no effect on this business transaction or the resulting damage to appellant. For these reasons, the trial court did not err in granting appellee's motion for summary judgment on first count of the complaint as a matter of law. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 33} In its first assignment of error, appellant contends, in essence, that the trial court erred in granting summary judgment on its seventh cause of action seeking punitive damages for the "intentional acts" of appellee. In support of this contention, appellant cites to facts regarding JG Industries' loan to RJ Rigging, Inc. and appellee's acquisition of shares in RJ Rigging, Inc. Appellant contends that this is an intentional act done in bad faith and constituting a breach of fiduciary duty. Appellant also asserts that the approval of a contract which he knew would not be honored by appellant and putting $6.2 million of appellant's money at risk is an intentional act.
 {¶ 34} We conclude that the seventh count of the amended complaint is a possible secondary claim for punitive damages founded upon appellant's claims of breach of fiduciary duty in the cause of action founded on the loan to RJ Rigging, Inc. and the count based upon the business transaction with Newport News. As observed by appellee, a punitive damages claim is a mere incident of the cause of action in which they are sought. Moskovitz v. Mt. Sinai Med. Ctr. (1994),69 Ohio St.3d 638, 650. Thus, "[n]o civil cause of action in this state may be maintained simply for punitive damages." Bishop v. Grdina
(1985), 20 Ohio St.3d 26, 28.
 {¶ 35} Accordingly, appellant's claim for punitive damages is tied directly to its ability to prevail upon its other causes of action alleging breach of fiduciary duty. Schafer v. RMS Realty (2000),138 Ohio App.3d 244, 301-302 (Punitive damages may be awarded for breach of fiduciary duty under the appropriate circumstances.). It follows that appellant cannot rely on a cause of action that was voluntarily dismissed, without prejudice, as a basis for the reversal of the trial court's judgment on the seventh count (punitive damages claim) of appellant's amended complaint. Furthermore, because we concluded that the grant of summary judgment to appellee on the claim predicated upon JG Industries' business dealings with Newport News was proper, appellant cannot rely on this cause of action in seeking a reversal of the seventh count of the amended complaint. Finally, appellant raises no error as to the grant of summary judgment on its cause of action involving Induco Services, the only remaining count upon which it could base a claim for punitive damages for breach of fiduciary duty. Consequently, we find appellant's first assignment of error is found not well-taken.
 {¶ 36} On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
Melvin L. Resnick, J., Richard W. Knepper, J., and Mark L.Pietrykowski, P.J., CONCUR.
[1] This testimony was provided in Newport News Shipbuilding and DryDock Co. v. JG Industries, Inc. (E.D.Va. 1999), Civil Action No: 4:99cv20.
[2] The correct procedure for introducing evidentiary materials, such as the excerpts filed by appellant in this case, is to incorporate them by reference in a properly framed affidavit pursuant to Civ.R. 56(E).Skidmore Assocs. Co. v. Southerland (1993), 89 Ohio App.3d 177,179. Appellant failed to follow this procedure. However, if the opposing party fails to object to improperly introduced evidentiary materials, the trial court may, in its sound discretion, consider those materials in ruling on the summary judgment motion. Id. at 179-80. Appellee did not object to the excerpts in the court below; thus, we shall assume that the trial court could consider them in reaching its decision.